Brian **BARLOW**, Plaintiff–Appellant,

v.

Officer George **GROUND**, I.D. # 9129, et al., Defendants–Appellees.

No. 90–55819.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 1991.

Decided Sept. 5, 1991.

Thomas F. Homann and George Weingarten, San Diego, Cal., for plaintiff-appellant.

James M. Chapin, Deputy City Atty., San Diego, Cal., for defendants-appellees.

Before PREGERSON, BRUNETTI and T.G. NELSON, Circuit Judges.

PREGERSON, Circuit Judge:

Brian Barlow sued George Ground, other San Diego police officers and the City of San Diego. He alleged violations of constitutional rights under 42 U.S.C. § 1983 as well as state law claims of assault and battery, false arrest, and negligent supervision. The district court granted summary judgment in favor of the defendants. We reverse in part and affirm in part.

I

On June 7, 1986, Brian Barlow marched in a Gay Pride Parade in San Diego. Several San Diego police officers were assigned to monitor the parade, which drew a sizable contingent of anti-gay hecklers. After an interchange between Barlow and the police, the facts of which are in dispute, a struggle ensued and Barlow was taken into custody. During the scuffle, Barlow bit two of the officers, drawing blood. Barlow was charged with two counts of battery against a police officer and one count of obstructing a police officer.

Police took Barlow to the hospital for treatment of injuries he sustained during the arrest. In response to police questioning at the hospital, Barlow acknowledged that he is gay. The police then asked Barlow if he had AIDS. He said no. Police asked again and received the same reply. Finally, after continued questioning, Barlow said, "for the officers' sake, you better take it that I do [have AIDS]."

The officers then asked permission to take Barlow's blood so they could test it for AIDS. Barlow refused to consent. Police then took Barlow to the San Diego Police Department, where they took a blood sample without consent and without a warrant.

After this warrantless seizing of Barlow's blood, police sought a warrant that would grant them authority to seize a second sample and test it for AIDS. The warrant police obtained authorize a second seizure, but did not authorize testing. Pursuant to the warrant, police then took a second sample of Barlow's blood.

Later, police obtained an order authorizing them to test the second blood sample. The California Court of Appeals held that the warrant authorizing the collection of the second blood sample was invalid for lack of probable cause. The California Supreme Court denied review and ordered the appellate decision depublished. Neither blood sample was ever tested.

A jury unanimously acquitted Barlow of the criminal charges. He then filed this suit in state court. The defendants removed the case to the federal district court. The district court granted the defendants' motion for summary judgment, and Barlow filed this timely appeal.

II

We review de novo a grant of summary judgment. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We reverse a grant of summary judgment if, viewing the evidence in the light most favorable to the non-moving party, there are genuine issues of material fact or if the district court erroneously applied the relevant law. *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

III

We consider first the issues arising out of Barlow's arrest at the parade. We hold that the district court improperly granted summary judgment to the defendants on the issue of the propriety of the detention and arrest of Barlow, the reasonableness of the force used, the availability of qualified immunity, and the question whether

Barlow can recover as damages the expenses he incurred in his successful defense against the criminal charges.

### A

The district court held that on the basis of the undisputed facts, the officers had proper grounds to detain Barlow and probable cause to arrest him. We disagree.

 The fourth amendment permits police to detain an individual only if they have an articulable and reasonable suspicion that the individual has committed or is about to commit a crime. *United States v. Woods*, 720 F.2d 1022, 1026 (9th Cir.1983). To arrest an individual, police need more than a reasonable suspicion; they must have probable cause. Probable cause to arrest exists when "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *United States v. Smith*, 790 F.2d 789, 792 (9th Cir.1986).

 The district court believed that police had grounds to detain Barlow because they claimed they saw him knock down a sign carried by an anti-gay protester. According to Barlow, however, his contact with the sign was entirely accidental. He said it came into his path as he walked past the protesters and he merely put his hand up to cover his face. An independent witness confirmed that Barlow bumped into the sign accidentally.

For summary judgment purposes, we must accept Barlow's version of the incident as true and determine whether the defendants are nevertheless entitled to judgment as a matter of law. Assuming Barlow's version to be true, we cannot say as a matter of law that the officers reasonably suspected that Barlow had committed a crime. Summary judgment was thus improper on the detention issue.

The disputed facts that prevent resolution of the detention issue on summary judgment also prevent resolution of the question whether police had probable cause

to arrest. Moreover, there are additional factual disputes as to whether the arrest took place before or after Barlow began struggling with the officers.

According to Barlow, police tackled him from behind as he was rejoining his section of the parade. He immediately felt "incredible pain" in his back. In reaction to the pain, he said, he fought back to defend himself. Given Barlow's version, a reasonable jury could conclude that Barlow was arrested *before* he began struggling with the officers and was thus arrested solely for accidentally bumping into a protest sign. If this is in fact what happened, the jury could reasonably conclude that police did not have probable cause to arrest Barlow.

### B

 The district court also granted summary judgment on Barlow's claim that the officers used excessive force in arresting him.

 An arrest is a seizure that is governed by the reasonableness standard of the fourth amendment. In determining whether the degree of force is reasonable under the fourth amendment, courts carefully balance the nature and quality of the intrusion against the governmental interest at stake. *Graham v. Conner*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). Such a balancing "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The inquiry is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them...." *Id.* 109 S.Ct. at 1872, citing *Scott v. United States*, 436 U.S. 128, 137–39, 98 S.Ct. 1717, 1723–24, 56 L.Ed.2d 168 (1978). Whether the amount of force used was reasonable is usually a question of fact to be determined by the jury. *White v. Pierce County*, 797 F.2d 812, 816 (9th Cir.1986).

Even if the parties agreed on the amount of force that was applied in this case, the question whether that force was reasonable could not properly be resolved on summary judgment. In this case, the same factual disputes that underlie the detention and arrest issues are relevant to determining whether police used reasonable force. Viewing the evidence in the light most favorable to Barlow, a reasonable jury could conclude that Barlow was tackled from behind and placed in an extremely punishing "pain compliance" hold solely for accidentally bumping into a demonstrator's placard. Moreover, a reasonable jury could conclude that even if police did have probable cause to arrest Barlow, they nevertheless applied excessive force. Throwing down a sign is not a severe crime and Barlow's actions in self-defense did not pose a threat to the officers until *after* they placed the "pain compliance" hold on him. Consequently, the district court erred by granting summary judgment on the excessive force issue.

### C

The district court also held that even if police did not have probable cause to arrest Barlow, and even if excessive force was used, the officers are nonetheless immune from civil damages under the doctrine of qualified immunity. The district court accordingly granted summary judgment to the defendants on this issue as well.

The doctrine of qualified immunity does not apply if reasonable officers would have known they were violating clearly established Constitutional rights. *See White v. Pierce County*, 797 F.2d 812, 815 (9th Cir.1986). In the present case, facts necessary to decide the issue of qualified immunity are in dispute. Summary judgment is therefore appropriate only if the officers are entitled to judgment on the basis of the facts most favorable to Barlow. That is not the case here. Barlow's version of the facts suggest that no reasonable officer could have believed there was probable cause to arrest or that the amount of force used against Barlow was justified. Sum-

mary judgment was therefore inappropriate.

### D

Barlow argues that as part of his damages for unlawful arrest, he should be entitled to recover the fees he paid his attorney for handling his successful defense of the criminal charges filed against him. He contends that these fees are part of the economic damages proximately caused by the officers' unlawful act of arresting him without probable cause. The district court held, as a matter of law, that the money he spent on his defense was not recoverable even if Barlow were successful in proving false arrest or a violation of the fourth amendment. According to the district court, if the expenses of the defense are to be considered damages, the proximate cause is not the officers, but the prosecutor, who independently decided to bring the charges. We disagree.

A plaintiff who proves that police arrested him without probable cause is entitled to compensation for the economic and non-economic damages he incurs as a proximate result of these violations. *Borunda v. Richmond*, 885 F.2d 1384, 1389 (9th Cir. 1988). Reasonable attorney's fees incurred by the plaintiff can constitute part of the foreseeable economic damages, unless the prosecutor's decision to file charges is such an independent judgment that it must be considered the proximate cause of the subsequent criminal proceedings. *Id.* at 1389–90.

Thus, the police officers can be liable for the costs of Barlow's defense if they acted maliciously or with reckless disregard for his rights. *See Smiddy v. Varney*, 665 F.2d 261, 267 (9th Cir.1981), *cert. denied*, 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). They can also be liable if they made false reports to the prosecutor, omitted material information from the reports, or otherwise prevented the prosecutor from exercising independent judgment. *Borunda*, 885 F.2d at 1390.

The evidence in *Borunda* was more than sufficient to support a finding that the

prosecutor did not exercise the sort of independent judgment that would cut off the officers' liability for the full consequences, including compensation for legal defense, of making an arrest without probable cause. The prosecutor's only information came from the police reports. There were glaring omissions from the reports; the officers presented contradictory accounts of the incident in court; and independent witnesses confirmed the plaintiffs' version of the arrest. Given any of these circumstances, the jury was clearly entitled to conclude that the officers misrepresented the facts to the prosecutor and that these misrepresentations were responsible for the filing of the criminal complaint. In such a case, we concluded in *Borunda*, the jury can conclude that the fees incurred in defending against the criminal charges are the direct and foreseeable result of the officers' conduct. *Id.* at 1390.

Barlow can present similar facts in this case. First, the prosecutor had only the arresting officers' police reports available to him. Second, the police omitted crucial information. For example, they failed to mention in their reports that they gave Barlow no *Miranda* warnings before questioning him about AIDS. Third, an independent witness confirmed Barlow's account of the sign incident, which was not presented in the police reports. Finally, the jury is entitled to consider the fact that the police themselves offer contradictory accounts of the arrest. In this case, therefore, the district court erred by ruling, as a matter of law, that Barlow cannot recover the money he spent defending against the criminal charges. There is ample evidence from which a reasonable jury could conclude that the arresting officers, through false statements and material omissions in their reports, prevented the prosecutor from exercising independent judgment.

## IV

We now consider the constitutional issues arising from the two seizures of Barlow's blood. We conclude that police violated the fourth amendment by seizing the first blood sample without a warrant. We further conclude that the district court erred in holding, as a matter of law, that defendants are protected by qualified immunity from liability for this warrantless seizure. Finally, we affirm the district court's judgment that defendants are entitled to qualified immunity for the second seizure of blood, which was pursuant to a facially valid warrant.

### A

Intrusions into the human body, including the taking of blood, are searches subject to the restrictions of the fourth amendment. *Schmerber v. California*, 384 U.S. 757, 766–68, 86 S.Ct. 1826, 1833–34, 16 L.Ed.2d 908 (1966). The Supreme Court has reaffirmed the "cardinal principle" that " 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *California v. Acevedo*, —— U.S. ——, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991), *quoting Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). Accordingly, the first seizure of Barlow's blood is valid only if the circumstances fit one of the exceptions to the rule that warrantless searches are unreasonable.

### 1

An analysis of the constitutionality of seizing Barlow's blood requires an understanding of AIDS, the Human Immunodeficiency Virus (HIV) that causes AIDS, and the medical tests that are available to detect the presence of HIV. *See generally* Green, "The Transmission of AIDS," in *AIDS and the Law* 28–31 (H. Dalton & S. Burris eds.1987). Although the presence of the virus leads eventually to the fatal condition known as AIDS, the process may take a long time. Carriers of the virus may remain in perfect health for many years. Although they have not yet developed AIDS, they are capable of infecting others with the virus.

HIV is "transmitted only through the exchange of semen or cervical or vaginal secretions during sexual contact, from transfusions of blood products that have been contaminated with the virus, by the shared use of hypodermic needles that have been contaminated, and between an infected pregnant woman and her fetus." Green, *supra*, at 28. Of 85,000 AIDS cases documented, none have resulted from a bite by an infected person. *See Johnetta J. v. Municipal Court*, 218 Cal.App.3d 1255, 1269, 267 Cal.Rptr. 666 (1990). According to the Center for Disease Control, the potential for transmitting the virus by saliva is "remote." United States Department of Human and Health Services, Center for Disease Control, "Guidelines for Prevention of Transmission of Human Immunodeficiency Virus and Hepatitus–B Virus to Health–Care and Public–Safety Workers," 10 (Feb.1989).

When a person becomes infected with HIV, the body eventually manufactures antibodies. It is these antibodies that blood tests detect. Because it takes several months before · the body manufactures these antibodies, a person may carry the virus for several months without showing up as HIV positive in a blood test. Thus a negative blood test does not necessarily indicate the absence of the virus. On the other hand, when a positive blood test reveals the presence of HIV antibodies, and hence the presence of HIV, the infected person is likely to develop AIDS eventually. Infected individuals who develop HIV antibodies retain those antibodies in their blood for the rest of their lives.

### 2

We next examine whether the seizing of Barlow's blood falls under one of the specific exceptions to the warrant requirement. One exception that comes to mind was approved by the Supreme Court in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In *Schmerber*, the police had probable cause to arrest the defendant for driving under the influence of alcohol. The police then compelled him to provide blood samples to determine the percentage of alcohol in his

blood. Because the percentage of alcohol in a person's blood begins to decline as soon as he stops drinking, the police needed to take the blood immediately to accurately measure the alcohol level at the time of the alleged offense. Because the delay necessary to obtain a warrant threatened the loss of the evidence, the Court upheld the warrantless seizure of blood. *Schmerber*, 384 U.S. at 770–71, 86 S.Ct. at 1835–36.

The *Schmerber* exception to the warrant requirement does not apply in this case. Unlike the evidence in *Schmerber*, the evidence here is not so "evanescent" that it would disappear before a warrant could be obtained. If an infected person has not yet developed antibodies to HIV, the blood will yield no useful information, because a negative blood test does not rule out the possibility of an infection. On the other hand, once a person has developed HIV antibodies, they remain a permanent feature of the infected person's blood. A slight delay in testing will not lead to the destruction of the information sought. In *Graves v. Beto*, 424 F.2d 524, 525 (5th Cir.1970), *cert. denied*, 400 U.S. 960, 91 S.Ct. 353, 27 L.Ed.2d 269 (1970), the Fifth Circuit held that *Schmerber* did not permit a warrantless search for evidence that was not evanescent. We agree. The HIV antibodies, even if they are present, are not evanescent. Because there was no chance that the information police sought would disappear with the passage of time, *Schmerber* does not permit the warrantless taking of blood to test for HIV.

### 3

In *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), the Supreme Court recognized that exigent circumstances may sometimes justify a warrantless search. Police officers can proceed without a warrant if they reasonably believe they are confronted with an emergency that threatens life or limb. The Court said that the "need to protect or preserve life or avoid serious injury is justification for what would otherwise be [an] illegal [search] absent an exigency or emergency." *Id.* at 392–93, 98 S.Ct. at 2413. It

noted, however, that the search must be "strictly circumscribed by the exigencies which justify its initiation." *Id.* at 393, 98 S.Ct. at 2413.

Even if Barlow was infected with HIV, it is highly unlikely that he could transmit the virus by biting. Moreover, even if such transmission were a realistic possibility, the officers could not decrease or increase the risk to their health by forcing an immediate nonconsensual blood test. Unfortunately, if the bite did infect the officers, there is no medical technique to reverse or retard the infection. It makes no difference to the officers' health whether Barlow was tested immediately, without a warrant, or a short time later pursuant to a warrant. The crux of the exigent circumstances exception is that the officer or others may be harmed if the officer does not act immediately. In this case, the delay caused by waiting to obtain a warrant could not have caused or compounded any harm. Therefore, the exigent circumstances exception does not apply.

In sum, because the information was not evanescent and waiting for a warrant could neither compound the dangers nor aggravate the medical consequences, neither *Schmerber* nor the exigent circumstances exception applies to the present case. Thus, because the warrantless search does not fall under a specifically established and well-delineated exception, it is *per se* unreasonable.

### B

██ Defendants argue that even if they violated the Constitution by taking Barlow's blood without a warrant, qualified immunity shields them from liability for damages. The district court found that qualified immunity applies because "a reasonable officer could have believed that a warrantless extraction of blood from plaintiff was lawful if necessary to protect the officers' health and safety." We hold that the district court erred by resolving this issue of qualified immunity on a motion for summary judgment.

Qualified immunity from civil liability can extend to officials who perform allegedly unlawful warrantless searches. *Anderson v. Creighton,* 483 U.S. 635, 643, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). "The relevant inquiry is whether a reasonable government official could have believed his conduct was lawful, in light of clearly established law and the information he possessed." *Thorsted v. Kelly,* 858 F.2d 571, 573 (9th Cir.1988), citing *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039.

The threshold question, which is a question of law, is "[w]hether at the time of the challenged action the legal norm allegedly violated by an official was clearly established." *Brady v. Gebbie,* 859 F.2d 1543, 1556 (9th Cir.1988), *cert. denied,* 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989). As the analysis in part IV.A. of this opinion demonstrates, Barlow has raised a genuine issue of material fact whether the warrantless seizure of his blood violated fourth amendment principles that were clearly established at the time.

The subsequent question is for the jury. It must decide "[w]hether a reasonable official would know that she is violating that clearly established law." *Id.* In the present case, the jury must decide whether a reasonable officer would have realized that there was time to procure a warrant. The district court erred by resolving this jury question on a motion for summary judgment.

### C

██ Barlow also seeks damages for the second seizure of his blood, which police effected pursuant to a warrant that a California appellate court later ruled was invalid. On appeal, defendants do not argue that the second seizure complied with the requirements of the fourth amendment. They contend, however, that the district court correctly ruled that they were entitled to qualified immunity. We agree.

██ A police officer generally has qualified immunity for conducting an unconstitutional search if he is acting on the basis of a facially valid warrant. *Malley v. Briggs,* 475 U.S. 335, 344 n. 6, 106 S.Ct. 1092, 1097 n. 6, 89 L.Ed.2d 271 (1986).

**1140**

Immunity does not protect the officer, however, if no reasonably competent officer would have concluded that a warrant should issue. *Id.* at 346 n. 9, 106 S.Ct. at 1098 n. 9. In this case, we believe that a reasonably well-trained officer could have believed that the warrant was valid.

### V

The district court's Memorandum Decision and Order does not discuss Barlow's state law claims. We assume that they are still in the case and will be addressed by the district court on remand.

### VI

The judgment of the district court is reversed in part and affirmed in part, and this case is remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to the appellant.