988 F.2d 118
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Eddie Lee FAIN, Plaintiff-Appellant,
v.
Jack KERNS; R. Prigge, Defendants-Appellees.
 No. 92-16236.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 22, 1993.*
Decided March 1, 1993.
 
 Appeal from the United States District Court for the Eastern District of California, No. CV-88-01513-WBS(JFM); William B. Shubb, District Judge, Presiding.
 E.D.Cal.
 VACATED AND REMANDED.
 Before GOODWIN, SCHROEDER and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Eddie Fain, a California state prisoner, appeals pro se the district court's grant of summary judgment in his 42 U.S.C. § 1983 action against police officer R. Prigge and nurse A.J. Murray. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo the district court's grant of summary judgment. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937 (1990). We we vacate in part and remand.
 
 
 3
 * Background
 
 
 4
 On September 25, 1988, Fain was arrested for burglary, possession of cocaine, and possession of stolen property. Following Fain's arrest, officer Prigge found a plastic bag containing a white powdery substance and a plastic bag containing marijuana in the pockets of the jacket worn by Fain.[1] Prigge determined there was a high probability that the powdery substance was narcotics-related and concluded that it was likely that Fain was under the influence of marijuana or another narcotic substance. Prigge ordered Fain to submit to the extraction of a blood sample to determine whether Fain was under the influence of marijuana or another narcotic.
 
 
 5
 Fain objected to the blood test. Nevertheless, Prigge directed Murray to draw the sample, which Murray did. Neither Prigge nor Murray had a warrant for the blood test. The blood sample was sent for a "felony blood analysis." The result indicated that there was no detectable amount of alcohol in the blood sample.[2] A jury subsequently convicted Fain of burglary.
 
 
 6
 Fain filed a civil rights action against Prigge and Murray, alleging they violated his Fourth Amendment rights by using unreasonable force to take a blood sample without Fain's consent and without a warrant. Prigge and Murray moved for summary judgment.
 
 
 7
 The matter was referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). On April 24, 1992, the magistrate judge found Prigge and Murray had no reason to believe that the information obtained from Fain's blood test would aid in convicting Fain of burglary. Moreover, the magistrate judge found that Prigge and Murray were not entitled to qualified immunity.[3] The magistrate judge found there was no material issue of fact in dispute and concluded that Prigge and Murray violated Fain's Fourth Amendment rights as a matter of law. Accordingly, the magistrate judge recommended that the district court deny Prigge's and Murray's motions for summary judgment and grant summary judgment in favor of Fain on the issue of liability only.
 
 
 8
 Pursuant to 28 U.S.C. § 636(b)(1), Prigge and Murray filed objections to the magistrate judge's findings and recommendations. Fain filed a reply to the objections. The district court conducted a de novo review of the record pursuant to 28 U.S.C. § 636(b)(1)(C). On June 12, 1992, the district court rejected the magistrate judge's recommendations, concluded that Prigge and Murray were entitled to qualified immunity,[4] and granted summary judgment for Prigge and Murray.[5] On July 1, 1992, the district court denied Fain's motion to vacate and reconsider its judgment. Fain timely appeals.
 
 II
 Analysis
 
 9
 Summary judgment is appropriate where it is demonstrated that there is no genuine dispute as to any material fact and that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex v. Catratt Corp., 477 U.S. 317, 323 (1986).
 
 
 10
 To state a claim under 42 U.S.C. § 1983, a plaintiff must prove that defendant acted under color of state law in depriving plaintiff of a right guaranteed under the Constitution or a federal statute. Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir.1988). The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. A blood test constitutes a search of the person within the meaning of the Fourth Amendment. Schmerber v. California, 384 U.S. 757, 768 (1966). Thus, search warrants are ordinarily required for blood tests. Id. at 769-70 (the Fourth Amendment protects human dignity and privacy and requires a search warrant "where intrusions into the human body are concerned"); Barlow v. Ground, 943 F.2d 1132, 1138 (9th Cir.1991), cert. denied, 112 S.Ct. 2995 (1992).
 
 
 11
 Nevertheless, in Schmerber, the Supreme Court held that it was not a violation of the Fourth Amendment for a police officer, upon probable cause but without a warrant, to cause a blood sample to be taken from a suspect who was arrested for driving while intoxicated and who had declined to take a breathalyzer test. Id. at 770-71. The holding of Schmerber was limited to "the facts of the present record" and did not reach the issue of whether "more substantial intrusions, or intrusions under other circumstances" would be permitted. Id. at 772.[6] The Schmerber exception to the warrant requirement does not apply where the "evidence is not so 'evanescent' that it would disappear before a warrant could be obtained." Barlow, 943 F.2d at 1138-39 (where a slight delay would not lead to the destruction of the evidence sought by the blood test, warrantless taking of blood is per se unreasonable).
 
 
 12
 A law enforcement officer is immune from liability for Fourth Amendment violations where the officer objectively could have believed that his or her conduct was lawful. See Anderson v. Creighton, 483 U.S. 635, 641 (1987). Qualified immunity protects those persons whose conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Hunter v. Bryant, 112 S.Ct. 534, 536 (1991) (per curiam); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).
 
 
 13
 To determine whether qualified immunity applies, the district court examines: (1) the specific right allegedly violated, (2) whether the right was "clearly established" such that a reasonable officer would be aware of its constitutional parameters, and (3) whether a reasonable officer could have believed the particular conduct at issue was lawful. DeNieva v. Reyes, 966 F.2d 480, 484-85 (9th Cir.1992) (citing Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991)). "[W]hether a reasonable officer could have believed probable cause (or reasonable suspicion) existed to justify a search or an arrest is 'an essentially legal question.' " Act Up!/Portland v. Bagley, No. 90-35888, slip op. 1071, 1079 (9th Cir., Feb. 10, 1993) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Thus, where the underlying facts are undisputed, the district court should determine the issue of qualified immunity on a motion for summary judgment. Act Up!/Portland, slip op. at 1079. Nevertheless, where there is a genuine issue of fact that prevents a determination of qualified immunity at summary judgment, then the case must go to trial. Id.
 
 
 14
 Applying this three-part analysis, we find genuine issues of material fact preclude a determination of whether Prigge and Murray are entitled to qualified immunity. Fain alleged Prigge and Murray violated his Fourth Amendment rights by taking the blood sample without consent and without a warrant. Fain's right to be protected against such search and seizure was clearly established. Schmerber, 384 U.S. at 770; Barlow, 943 F.2d at 1138. A reasonable officer could believe that taking Fain's blood sample without a warrant was lawful conduct only if the evidence sought was evanescent. The record contains no evidence of whether the delay occasioned by procuring a search warrant would have jeopardized the relevant evidence sought by taking Fain's blood sample.
 
 
 15
 Prigge and Murray relied on Schmerber to support their arguments that exigent circumstances justified taking Fain's blood sample without his consent and without a warrant. Nevertheless, Schmerber discusses the permitted extraction of a blood sample to determine the level of intoxication by alcohol. 384 U.S. at 771. In that case, the rapid dissipation of alcohol into the bloodstream rendered useful testing an emergency and justified warrantless testing. Id. at 770-71. By contrast, here, Prigge and Murray stated they needed to test Fain's blood in connection with his arrest for possession of cocaine to determine whether Fain was under the influence of marijuana or another narcotic. There is no evidence in the record of the time during which marijuana or cocaine dissipates into the bloodstream. Therefore, it is unclear whether exigent circumstances existed to justify a warrantless blood sample. See Barlow, 943 F.2d at 1139.
 
 
 16
 There is also a question of fact as to whether a urine sample would have been adequate for testing. Fain stated that he told Prigge and Murray that he was not under the influence of any drug and that he was afraid of needles. Fain further stated that he offered to submit to a urine test in lieu of a blood test. Prigge stated that Fain did not request any form of testing in lieu of a blood test. Fain's contentions are sufficient to raise a triable issue of fact as to whether the blood test was necessary and, therefore, whether a reasonable officer could have believed a warrantless blood test was lawful. See Hammer v. Gross, 932 F.2d 842, 854 (9th Cir.1991) (Kozinski, J., concurring in part) ("If the government [is going to use force to draw a blood sample] against [a suspect's] will and despite his acquiescence in an effective alternative, it had better have a reason.").
 
 
 17
 Because there are material questions of fact relevant to the reasonableness of Prigge's and Murray's actions in securing the blood sample, summary judgment was improper. See ActUp!/Portland, slip op. at 1079.[7]
 
 
 18
 VACATED AND REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Additionally, Prigge observed that Fain's face was beaded with sweat and his eyes were bloodshot
 
 
 [2]
 It is unclear whether the blood was tested for marijuana or another narcotic
 
 
 [3]
 The magistrate judge found it was clearly established that the Fourth Amendment required a nexus between the evidence searched or seized and the criminal behavior at issue. The magistrate judge concluded that no reasonable officer could have believed the evidence of intoxication would aid in the conviction of a burglary
 
 
 [4]
 Because the district court concluded that qualified immunity applied, it did not reach the issue of whether Prigge and Murray violated Fain's Fourth Amendment rights
 
 
 [5]
 The district court noted that generally an officer who arrests a suspect on burglary does not entertain a reasonable belief that he or she may subject the suspect to a blood test. Nevertheless, the district court ruled that this case was unique because Fain also was arrested for possession of cocaine. The district court found that Prigge had probable cause to believe that Fain was under the influence of a controlled substance and therefore could reasonably believe that taking the blood sample was lawful
 
 
 [6]
 Schmerber made clear that the exigent circumstances surrounding blood-alcohol testing justified the warrantless search. 384 U.S. at 770. See Fuller v. M.G. Jewelry, 950 F.2d 1437, 1449-50 (9th Cir.1991)
 
 
 [7]
 Fain contends Prigge and Murray violated his Fifth Amendment right by taking his blood sample prior to reading him his Miranda rights. Fain failed to include this allegation in his complaint. Thus, like the district court, we will not address this contention. See Green v. Christiansen, 732 F.2d 1397, 1400 n. 1 (9th Cir.1984)