993 F.2d 883
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Roger N. MOORE, Plaintiff-Appellant,
v.
John MORAN, et al., Defendants-Appellees.
 No. 92-16220.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 27, 1993.*
Decided May 11, 1993.
 
 Before: BROWNING, KOZINSKI and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Roger N. Moore, a Nevada state prisoner, appeals pro se the district court's judgment, following a jury verdict, in favor of the defendants, Las Vegas Police officers, in his 42 U.S.C. § 1983 action. Moore contends that there was not substantial evidence to support the jury verdict. He also contends that the defense counsel improperly referred to his criminal record during the trial. He claims the police violated his civil rights by using excessive force during his arrest. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 Sufficiency of Evidence
 
 3
 Moore appears to contend that the jury should have returned a verdict in his favor because there was insufficient evidence to justify a verdict in favor of the defendants. This contention is without merit.
 
 
 4
 We review a jury verdict to determine whether it is supported by "substantial evidence." Sanders v. Parker Drilling Co., 911 F.2d 191, 193 (9th Cir.1990), cert. denied, 111 S.Ct. 2014 (1991). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1014 (9th Cir.1985) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)), cert. denied, 474 U.S. 1059 (1986). "A jury verdict may be reversed if it is clearly erroneous." Id.
 
 
 5
 However, "when there is sufficient evidence before the jury on a particular issue, and if the instructions of law on the issue were correct, then the jury's verdict must stand." Id. (quotation omitted). Moreover, "[t]he credibility of the witnesses and the weight of the evidence are issues for the jury and are generally not subject to appellate review." Sanders, 911 F.2d at 194 (citing Transgo, 768 F.2d at 1024).
 
 
 6
 "An arrest is a seizure that is governed by the reasonableness standard of the fourth amendment." Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir.1991), cert. denied, 112 S.Ct. 2995 (1992). "In determining whether the degree of force [used during an arrest] is reasonable under the fourth amendment, courts carefully balance the nature and quality of the intrusion against the governmental interest at stake." Id. (citing Graham v. Conner, 490 U.S. 386, 396 (1989)). Factors to be considered in balancing these interests include the facts and circumstances of each case, particularly the severity of the crime, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Id.
 
 
 7
 Here, each of the police officers involved testified to substantially the same factual scenario. On August 31, 1988, four police officers investigating a disturbance call were told by Verline Henderson that a man, later identified as Moore, had entered her home and threatened her family. The officers were told that the suspect had displayed a gun. Ms. Henderson and her daughter, who knew the suspect, described him and the car he was driving. They also told the officers where they might find the suspect. An unoccupied car matching the Hendersons' description was located near the address given by the Hendersons.
 
 
 8
 The officers then spotted a man fitting the Hendersons' description of Moore approaching the car. Upon seeing the officers, Moore ran in the other direction. Ignoring the officers' shouts to stop, Moore surreptitiously entered a nearby apartment. The police officers knocked and entered the apartment and were told by an elderly man that Moore had come in and gone to a back bedroom. Upon entering the bedroom, the officers found a woman and a baby lying on a mattress on the floor. Moore was laying near them face down on the mattress with his hands underneath him.
 
 
 9
 The officers had been informed that Moore had a gun, so they approached him with their guns drawn. After escorting the woman and child from the room, the officers issued several verbal commands for Moore to show his hands. Moore ignored the commands. One of the officers decided to place Moore under arrest for obstructing a police officer. The officer replaced his weapon and attempted to handcuff Moore. Moore struggled and resisted the officer. After struggling with Moore without success, the officer slapped Moore on the right side of his face twice to force him to cooperate. Moore continued to resist. The officer slapped Moore a third time and he submitted. The officer was only able to cuff one hand before Moore began to struggle again. A second officer then replaced his weapon and assisted the first officer. The officers testified that after Moore was handcuffed, no additional force was used against him.
 
 
 10
 Moore offered the testimony of the occupants of the apartment that they heard noises which sounded like fighting coming from the room. However, none of the occupants of the apartment was in the room at the time, and none of them witnessed any use of force. Moore also offered the testimony of a woman who lived across the street that she saw him leaving the apartment with the officers and it appeared that he had a black eye.
 
 
 11
 The officers' testimony could reasonably be accepted to support the conclusion that the force used was reasonable. See Graham, 490 U.S. at 396. The officers were responding to a call that Moore had entered Verline Henderson's home and threatened to kill her and her family. The officers had been told that Moore was seen with a weapon in the car he was driving. And finally, when the officers located Moore and attempted to investigate the call, Moore turned and ran in the opposite direction. He later actively resisted the officers' attempts to arrest him by struggling and refusing to be handcuffed.
 
 
 12
 Moreover, the jury's verdict in favor of the police officers indicates that they believed the officers to be more credible than Moore's witnesses. See Sanders, 911 F.2d at 194. Therefore, the jury's determination is not reviewable by this court. Id.
 
 Prior Criminal Record
 
 13
 Moore also contends that the defense counsel improperly referred to his criminal record during the trial. This contention is without merit.
 
 
 14
 Federal Rule of Evidence 609(a)(1) permits the admission of evidence of prior convictions for impeachment purposes. An attorney's strategic decision to elicit evidence of prior convictions from a client prior to its introduction by the opposition, in order to soften its anticipated effect on the jury waives his objection on appeal. Cf. United States v. Williams, 939 F.2d 721, 724 (9th Cir.1991) (a defense attorney has a strategic choice between softening the impact of prior convictions on the jury and preserving the Rule 609 objection for appeal).
 
 
 15
 Moreover, even if the evidence of prior convictions is inadmissible, there is no reversible error if "[i]t was [plaintiff's] counsel who, perhaps for some strategic purpose, first introduced the fact of the prior conviction into evidence." Cf. id. (quoting United States v. Bryan, 534 F.2d 205, 206 (9th Cir.1976) (per curiam)).
 
 
 16
 Here, Moore's attorney began his direct examination by eliciting evidence about Moore's prior convictions. The defense counsel later questioned Moore about his conviction for being an ex-felon in possession of a firearm in order to impeach his earlier testimony that he had never possessed a firearm. Other references to Moore's prior arrests by defense counsel were made to impeach his earlier testimony that he did not know who the men in police uniforms and driving marked patrol cars were.
 
 
 17
 Any other references to Moore's criminal record were made out of the listening range of the jury during side-bar deliberations. Therefore, because Moore's counsel made the strategic choice to introduce evidence of his prior convictions and thereby open the door, he waived any objections on appeal. See id. Furthermore, Rule 609 of the Federal Rules of Evidence permit's the use of prior convictions for impeachment purposes, and the defense counsel did not improperly refer to Moore's criminal record during the trial.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3