**VERIZON DELAWARE, INC., et al., Plaintiffs,**

v.

**COVAD COMMUNICATIONS CO., et al., Defendants.**

**And Related Counterclaims.**

**No. C–01–20524–JF.**

United States District Court, N.D. California, San Jose Division.

Nov. 13, 2002.

Daniel H. Bookin, Randall Edwards, O'Melveny & Myers, LLP, San Francisco, CA, John H. Longwell, Neil M. Gorsuch, Kellogg, Huber, Hansen, Todd & Evans, Washington, DC, Steven F. Benz, for Verizon Delaware, Inc., Verizon New England, Inc. Verizon Maryland, Inc., Verizon New Jersey, Inc., Verizon New York, Inc., Verizon Pennsylvania, Inc., Verizon Washington, Inc.

Alfred C. Pfeiffer, Jr., William K. Brinkley, McCutchen Doyle Brown & Enerson, LLP, San Francisco, CA, Gabriela Richeimer, John R. Gerstein, Merril Hirsh, Ross Dixon & Bell, LLP, Washington, DC, Jason A. Yurasek, Bingham McCutcheon LLP, San Francisco, CA, Margaret A. Robbins, Covad Communications Co., Santa Clara, CA, for Covad Communications Co., Dieca Communications, Inc.

## ORDER (1) GRANTING COVAD'S MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO VERIZON'S CLAIMS AND (2) DEEMING MOOT VERIZON'S MOTION TO DISMISS COVAD'S COUNTERCLAIMS

FOGEL, District Judge.

On August 12, 2002, the Court heard argument with respect to (1) the motion for summary judgment brought by Covad Communications Company and Dieca Communications, Inc. (collectively "Covad") and (2) the motion to dismiss brought by Verizon Delaware, Inc., Verizon New England, Inc., Verizon Maryland, Inc., Verizon New Jersey, Inc., Verizon New York, Inc., Verizon Pennsylvania, Inc.

and Verizon Washington, Inc. (collectively, "Verizon"). The Court has considered the briefing and evidence submitted by the parties as well as the arguments of counsel presented at the hearing. For the reasons discussed below, the Court will grant Covad's motion for summary judgment and deem moot Verizon's motion to dismiss.

## I. BACKGROUND

Verizon is one of the former Bell Operating Companies spun off from AT & T in 1983. It controls the local telecommunications networks in its regions. Verizon also offers a high speed internet access service known as "digital subscriber line" ("DSL"). Covad is both Verizon's competitor in the DSL market and Verizon's customer, in that Covad buys access to Verizon's telephone infrastructure in order to provide DSL service to Covad customers.

The relationship between Verizon and Covad has become increasingly contentious. The parties have sued each other in multiple fora and have complained about each other's alleged conduct before various regulatory bodies. Verizon filed suit in this Court on June 11, 2001. The Court dismissed Verizon's original complaint with leave to amend for failure to state a claim upon which relief could be granted. On December 18, 2001, Verizon filed the operative first amended complaint, alleging California state law claims for intentional misrepresentation, negligent misrepresentation, and unfair competition in violation of Cal. Bus. & Prof.Code § 17200. Covad sought dismissal of that pleading on several grounds, including the filed rate doctrine.[1] The Court denied Covad's motion to dismiss without prejudice to a motion for summary judgment based upon the filed rate doctrine. Covad answered the first amended complaint and asserted

three state law counterclaims for fraud, negligent misrepresentation and violation of state unfair competition statutes. Covad now seeks summary judgment on Verizon's claims based upon the filed rate doctrine. Verizon moves to dismiss Covad's claims on a number of grounds.

Verizon claims that in the first quarter of 2000, Covad issued more than 23,000 false "trouble tickets," causing Verizon to send repair trucks to the site of alleged problems when in fact the only problem was with Covad's own equipment. According to Verizon, the false trouble tickets were part of a deliberate course of conduct, described as follows: Although Covad was not making a profit as of 2000, it nonetheless claimed success in the industry by touting the growth of its customer base. (First Amended Complaint, "FAC," at 49) However, early in 2000 Covad management realized that Covad would not meet its quarterly projections for new customers. (*Id.* at 51) Management therefore conceived of a scheme to shift all technicians and resources toward new installations. (*Id.* at 53) Because Covad lacked the resources to pursue this scheme while offering repair service to existing customers, Covad's technicians were instructed to open trouble tickets on all complaints without making any attempt to determine whether the problem was with Covad's equipment or Verizon's loops. (*Id.* at 53–55) Covad's technicians also were instructed to close new orders regardless of whether the DSL was working; problems with such new service were referred to Verizon via trouble tickets. (*Id.* at 55) The push to close orders was referred to internally as "March Madness" because employees who closed the most orders were promised tickets to the NCAA basketball Final Four tournament. (*Id.*) Verizon at-

---

**1.** *Cf., American Telephone and Telegraph Co. v. Central Office Telephone, Inc.,* 524 U.S. 214, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998).

taches to its first amended complaint the sworn declarations of thirty-seven former Covad employees who confirm and describe in detail the scheme alleged by Verizon. (FAC, Exh. F)

According to Verizon, Covad received significant benefits from opening the false trouble tickets. Verizon technicians often found that Covad had not connected the inside wiring of the end-user's home to the Verizon loop or otherwise had failed to complete the installation. (FAC at ¶ 66) Verizon technicians likely as not would simply complete the job, thus saving Covad the expense of doing so. (*Id.*) Covad also saved on troubleshooting costs, since Covad did not attempt to determine the source of problems before opening trouble tickets. (*Id.* at 72) Finally, Covad could deflect blame for any unresolved problems onto Verizon by stating that trouble tickets had been opened and that Verizon was working on the problems. (*Id.* at 87)

Verizon alleges that Covad's massive use of trouble tickets resulted in significant loss of money for labor, processing costs and material. (FAC at ¶ 93) Verizon also alleges that Covad's conduct resulted in lost business opportunities, in that Verizon could have been devoting the resources it used responding to trouble tickets to other, legitimate endeavors. (*Id.*) Moreover, if Verizon's performance fell below certain levels, Covad was entitled to substantial payments or price reductions. (*Id.* at 94) Covad received millions of dollars in such concessions as a result of the above-described scheme. (*Id.* at 95) Finally, Verizon asserts that Covad's conduct resulted in suppressed demand for Verizon's services. (*Id.* at 97)

## II. COVAD'S MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson,* 477 U.S. 242, 248–49, 106 S.Ct. 2505; *Barlow v. Ground,* 943 F.2d 1132, 1134–36 (9th Cir.1991).

### B. Law Of The Case Argument

■ Verizon argues that Covad is recycling arguments made in connection with its prior motion to dismiss and that the instant motion therefore should be denied as an improper motion for reconsideration or under the doctrine of law of the case. Verizon acknowledges that the Court's ruling with respect to Covad's earlier motion was expressly without prejudice to a motion for summary judgment based upon the filed rate doctrine. It argues, however, that the Court's ruling contemplated that the parties would engage in discovery regarding the filed rate doctrine and asserts that the parties have not done so. In fact, this Court's prior ruling was not

based upon an assumption that further discovery was necessary but rather upon the Court's view that the facts and arguments relevant to the filed rate doctrine had not been developed adequately in Covad's motion to dismiss. The parties' current briefs address the filed rate doctrine with extreme thoroughness. Moreover, the record now contains the requisite proof that the Interconnection Agreements ("IA's") that govern the parties' relationship are filed with the appropriate regulatory body in each state in which Verizon and Covad do business with each other. Accordingly, the Court concludes that Covad's motion is procedurally appropriate.

## C. Rule 56(f) Request

Verizon submits a document entitled "Federal Rule Of Civil Procedure 56(f) Declaration Of Neil M. Gorsuch." In this document, Mr. Gorsuch lists a number of areas about which Verizon would like to take discovery, including whether the parties intended that the IA's cover trouble tickets that are intentionally falsified. As is discussed more fully below, the Court concludes that the issues presented by Covad's motion are purely legal in nature, that any such factual issues thus are immaterial, and that the proposed discovery would not inform the Court's analysis of Covad's motion. Accordingly, Verizon's request for continuance pursuant to Fed. R.Civ.P. 56(f) will be denied.

## D. Application Of Filed Rate Doctrine

The filed rate doctrine, also referred to as the filed tariff doctrine, requires that common carriers and their customers adhere to tariffs filed and approved by appropriate regulatory agencies. *Brown v. MCI WorldCom Network Services*, 277 F.3d 1166, 1170 (9th Cir.2002). Accordingly, no party may bring a judicial challenge to the validity of a filed tariff or bring a judicial proceeding to enforce any rate other than the rate established by the filed tariff. *Id.* "In sum, the filed-rate doctrine's purpose is to ensure that the filed rates are the *exclusive source* of the terms and conditions by which the common carrier provides to its customers the services covered by the tariff." *Id.* (internal citation and quotation marks omitted).

Two principles underlie the filed rate doctrine. First, the doctrine prevents carriers from engaging in price discrimination between customers (the non-discriminatory strand). *Fax Telecomunicaciones, Inc. v. AT & T*, 138 F.3d 479, 489 (2d Cir.1998). Second, the doctrine preserves the exclusive role of regulatory agencies in approving rates and keeping courts, which are far less competent to perform this function, out of the rate-making process (the nonjusticiability strand). *Id.* "The nonjusticiability strand recognizes that (1) legislatively appointed regulatory bodies have institutional competence to address rate-making issues; (2) courts lake the competence to set ... rates; and (3) the interference of courts in the rate-making process would subvert the authority of rate-setting bodies and undermine the regulatory regime." *Id.* (internal citation and quotation marks omitted).

In the instant case, the tariffs at issue are contained in IA's approved by the regulatory agencies of each state in Verizon's territory where Covad does business. Among the rates set forth in these IA's are the amounts Verizon may charge Covad for a "customer misdirect." A customer misdirect occurs when Covad opens a trouble ticket notifying Verizon of a problem with Verizon's equipment, causing Verizon to send a repair truck to the trouble site, and the problem ultimately is found to be with Covad's equipment rather than Verizon's. In these circumstances, Covad is required to reimburse Verizon for the cost of dispatching the repair truck. The IA's approved in the relevant states provide

expressly the amount of compensation Verizon may recover for each misdirect.[2]

■ Covad asserts that the because the IA's establish the amounts Verizon may recover for each trouble ticket, any attempt to vary this amount is barred by the filed rate doctrine. The Court agrees. The parties negotiated to the penny the amount Verizon may recover for each misdirect. The instant proceeding in effect is an effort to alter this rate by means of state law tort claims. However, as the Supreme Court has held, "[t]he rights as defined by the tariff cannot be varied or enlarged by either contract or tort." *American Telephone and Telegraph Co. v. Central Office Telephone, Inc.*, 524 U.S. 214, 227, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998).

Verizon asserts that the filed rate doctrine applies only to claims of customers against carriers, not to claims of carriers such as those presented here. While the vast majority of the cases addressing the filed rate doctrine do involve claims of customers, the Supreme Court has made clear that the doctrine applies equally to claims of carriers. In *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 101 S.Ct. 2925, 69 L.Ed.2d 856 (1981), a regulated seller of natural gas ("Seller") entered into a contract under which it provided natural gas from the Sligo Gas Field in Louisiana to Arkansas Louisiana Gas Co. ("Arkla"). The contract contained a fixed price schedule and a "favored nations clause" providing that if Arkla purchased Sligo Field natural gas from another party at a rate higher than that negotiated with Seller, Seller would be entitled to that higher rate as well. Seller filed the Arkla contract with the appropriate regulatory agency and obtained approval of the contract rates. Seller subsequently filed suit against Arkla, asserting that the favored nations clause had been triggered but that because Arkla had not informed Seller of this fact, Seller had not filed rate increases with the regulatory agency. Seller sought damages in an amount equal to the difference between the price it was paid and the price it would have been paid had it filed rate increases pursuant to the favored nations clause. The Supreme Court held that Seller could not recover what in effect would be a retroactive increase in the filed rate notwithstanding the fact that Arkla's misconduct prevented Seller from filing a higher rate that likely would have been approved. *Id.* at 583, 101 S.Ct. 2925. The Court noted that "[i]t would undermine the congressional scheme of uniform rate regulation to allow a state court to award as damages a rate never filed with the Commission and thus never found to be reasonable within the meaning of the Act. Following that course would permit state courts to grant regulated sellers greater relief than they could obtain from the Commission itself." *Id.* at 579, 101 S.Ct. 2925.

Verizon attempts to distinguish *Arkansas Louisiana Gas Co.* on the ground that the carrier's claims in that case did not sound in tort. However, the decision is couched in extremely broad language, and its rationale appears equally applicable to tort claims. Verizon argues that the nondiscrimination rationale underlying the filed rate doctrine would not be served by imposing the doctrine upon claims of carriers. However, as noted earlier, an equally important policy underlying the filed rate doctrine is the preservation of the exclusive role of regulatory agencies in approving rates. This policy is served by application of the doctrine to claims of carriers.

**2.** In some states, Verizon may recover $99.61 for a misdirect; in others $116.74; in still others $129.39.

Verizon argues that even assuming that the filed rate doctrine applies to claims of carriers, the doctrine does not apply in the instant case because Covad's conduct falls outside the scope of the negotiated customer misdirect rates set forth in the IA's. It points to language in the IA's requiring Covad to isolate the cause of the trouble initially and to issue a trouble ticket to Verizon only after confirming that Verizon's equipment is the source of the problem. It asserts that while it was contemplated that a small number of innocent mistakes would occur, the parties never contemplated that there would be wholesale, deliberate abuse of the trouble ticket system at the time they negotiated the customer misdirect rates. Verizon contends that because Covad failed to fulfill its initial troubleshooting responsibilities under the IA's, the customer misdirect rates set forth in the IAs simply do not apply.

Even assuming that Verizon is correct in its assertion that the misdirect rates set forth in the IAs do not apply in light of Covad's conduct, the Court concludes that the filed rate doctrine nonetheless bars Verizon's claims. Boiled down to its essence, Verizon's argument is that it is entitled to recover a greater amount of money for each customer misdirect arising out of Covad's alleged scheme than is provided for in the IAs. Verizon characterizes this greater amount of money as "damages," but in effect it is seeking an increased rate for deliberate as opposed to accidental misdirects.

The IA's do not address deliberate misdirects specifically, and none of the cases cited by the parties addresses an analogous factual situation. However, all of the published cases addressing the filed rate doctrine hold unequivocally that "no one may bring a judicial proceeding to enforce any rate other than the rate established by the filed tariff." *Brown*, 277 F.3d at 1170;

see also *American Telephone and Telegraph Co.*, 524 U.S. at 222, 118 S.Ct. 1956 (holding that a carrier's duly filed rate is the only lawful charge and that deviation from such rate is not permitted upon any pretext); *Fax Telecommunicaciones*, 138 F.3d at 482 (holding that "[c]arriers are prohibited from providing communications services except pursuant to a filed tariff, and may not charge, demand, collect or receive a rate other than the rate listed in the applicable tariff"); *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 19 (2d Cir. 1994) (holding that "the legal rights between a regulated industry and its customers with respect to rates are controlled by and limited to the rates filed with and approved by the appropriate regulatory agency"). "In addition to barring suits challenging filed rates and suits seeking to enforce rates that differ from the filed rates, the filed-rate doctrine also bars suits challenging services, billing or other practices when such challenges, if successful, would have the effect of changing the filed tariff." *Brown*, 277 F.3d at 1170.

Based upon these authorities, the Court concludes that Verizon may not seek recovery of a new and higher rate for deliberate misdirects in this Court. Such a rate does not appear in the tariffs filed with the appropriate regulatory agencies, and intervention by this Court thus would undermine the role of those agencies as defined by the Supreme Court. Accordingly, the Court will grant Covad's motion for summary judgment on the ground that Verizon's claims are barred by the filed rate doctrine.

### III. VERIZON'S MOTION TO DISMISS

Verizon moves to dismiss Covad's counterclaims on a number of grounds. At oral argument, counsel for Covad represented that Covad would agree to dismissal of its

counterclaims if it were to prevail on its motion for summary judgment. In light of this representation, the Court will dismiss Covad's counterclaims and deem moot Verizon's motion to dismiss.

### IV. ORDER

(1) Covad's motion for summary judgment is GRANTED;

(2) Covad's counterclaims are DISMISSED with prejudice;

(3) Verizon's motion to dismiss Covad's counterclaims is deemed MOOT; and

(4) Judgment shall be entered accordingly.