George **BORUNDA** and Richard Borunda, Plaintiffs–Appellees,

v.

Michael **RICHMOND** and Richard Way, Police Officers, City of Salinas, Defendants–Appellants.

No. 87–2364.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1988.

Decided Nov. 3, 1988.

As Amended on Denial of Rehearing and Rehearing En Banc Sept. 12, 1989.

P. Michael Groff, Salinas, Cal., for defendants-appellants.

John Doyle, San Francisco, Cal., for plaintiffs-appellees.

Before WISDOM,* THOMPSON and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Appellants Michael Richmond and Richard Way, police officers for the City of Salinas in Salinas, California, appeal from an order of the district court entering judgment on the jury's special verdict in favor of plaintiffs, George and Richard Borunda, in an action brought under 42 U.S.C. § 1983 claiming that appellants had violated the plaintiffs' fourth amendment rights by arresting them without probable cause. Appellants contend that the district court erred (1) in admitting evidence of the Borundas' acquittals in a prior state criminal proceeding; (2) in admitting the amount of the attorneys' fees incurred in defending against the state criminal charges; and (3) in denying their motions for nonsuit and/or directed verdict. We reject these contentions and affirm.

### I.

### FACTS

This appeal arises from events that transpired during the early evening hours of September 9, 1984, a Sunday. The facts are in dispute, and there exist three different accounts of the events that occurred on that particular day.

Officer Michael Richmond's version of the incident was that he and Officer Way, on duty in uniform and driving a marked patrol unit, pulled up in front of 827 Beech Street in Salinas, California, at approximately 8:30 p.m. This was the residence of appellees George and Richard Borunda, father and son. According to Officer Richmond, the two officers confronted two unidentified persons drinking beer on the sidewalk. While the officers were talking to the two subjects, an extremely intoxicated George Borunda appeared at the front door of the residence and told the officers to get off his property or he was going to kill them. Richard Borunda was behind George at this time, still inside the house. One of the unidentified subjects informed the officers that he could control George, but the situation escalated to the point where George and Richard Borunda dragged Officer Richmond into the house and wrestled with him, George apparently going for Officer Richmond's gun and Richard jumping on Officer Richmond's back. Officer Way then came to Richmond's assistance, calling for backup. The two officers ultimately subdued the two Borundas and, thereafter, arrested them.

Officer Richard Way's account of the incident is identical to that given by Officer Richmond up to the point where they arrived at 827 Beech Street. At that juncture, their recollections of the events differ. Officer Way, who wrote the police report, alleged that one of the two subjects they initially encountered drinking beer on the sidewalk that evening was Richard Borunda. The officers spoke with Richard and his companion and determined that they were connected with 827 Beech Street. The two individuals were slightly intoxicated at that time. Officer Way instructed them to take the beer into the house. According to Way, Richard Borunda and his companion stepped onto the lawn and informed Officer Way that they were now on private property and did not have to go inside the house. Officer Way replied that they would have to take their beers inside or be cited for drinking in public. George Borunda then came out of the house, swearing and yelling at the officers to get off his property or he was going to kill them. He likewise was instructed to go back into the house along with Richard and his companion. They all refused to do so. The two officers then came to the conclusion that George Borunda would have to be

---

* The Honorable John Minor Wisdom, Senior Circuit Judge for the Fifth Circuit, sitting by designation.

arrested for violation of California Penal Code § 647(f), drunk or disorderly in public. Upon leaving their patrol car to arrest George, the two officers were met with resistance from both George and Richard. This escalated to the point where George and Richard pulled Officer Richmond into their residence and assaulted him. Officer Way used Mace and his baton on the Borundas in order to subdue them, and they were ultimately arrested.

The appellees' account of the incident radically differs from the two officers' versions. According to the Borundas, Richard was drinking beer with a friend on the front lawn of his residence when Officers Richmond and Way pulled up. The officers spoke to two people walking down the street with beer cans in their hands, and told them to pour out their beers. They refused, cursing the two officers. The officers then focused their attention on Richard and his friend, instructing them to empty their beers. Richard was not intoxicated at this time, and he and his friend complied with the request. Richard, upon reflection, then asked the officers why he had to empty his beer, as he was on his own property. Receiving an unsatisfactory answer, Richard indicated he was going into the house to retrieve two more beers for himself and his companion. According to Richard, he was bent over reaching inside his beer cooler, located by the front door, when he was struck on the side of the head by Officer Way.

At this point, George Borunda, who had been sitting in his living room watching television, got up to protest this attack on his son. He was jabbed in the stomach by Officer Richmond, who had rushed into the house. After a liberal application of Mace upon George, the officers then handcuffed and arrested the Borundas.

What is undisputed is that the Borundas were charged with, *inter alia*, resisting arrest (Cal.Penal C. § 148), assault on a police officer (Cal.Penal C. § 243), and public intoxication (Cal.Penal C. § 647(f)). A police report was prepared in support of the charges.

During a jury trial, Richard and George Borunda were represented by two defense attorneys. They were ultimately acquitted of all criminal charges.

## II.

## PROCEEDINGS BELOW

Following the criminal acquittals, the Borundas brought an action under 42 U.S.C. § 1983 against the City of Salinas and various other city officials and police officers. With the exceptions of Officers Richmond and Way, all other defendants were dismissed prior to trial.

After a four-day trial, the jury returned a special verdict in favor of the Borundas and awarded them each approximately $11,000.00.

## III.

## ISSUES ON APPEAL

Appellants Richmond and Way advance interesting and not wholly insubstantial arguments on appeal. They contend that the trial court erred in its evidentiary rulings and in refusing to direct a verdict in their favor.

## IV.

## DISCUSSION

A. Evidence of Acquittals in Prior State Criminal Proceeding

Appellants contend that admission in the present case of evidence of the acquittals in the prior state criminal proceeding was erroneous and effectively "estopped" them from showing that probable cause for the arrests existed.

Evidence of an acquittal is not generally admissible in a subsequent civil action between the same parties since it constitutes a "negative sort of conclusion lodged in a finding of failure of the prosecution to sustain the burden of proof beyond a reasonable doubt." S. Gard, 2 Jones on Evidence, § 12:25, p. 391 (6th ed. 1972). Here, however, the district court did not admit the evidence as proof of the

facts upon which the acquittals were based. Evidence of the acquittals was admitted solely for the purpose of showing that the plaintiffs incurred damages in the form of attorneys' fees in successfully defending against the state criminal charges, and that the fees charged were reasonable in light of the success achieved.

■ Even if evidence of the acquittals was relevant, this evidence should have been excluded if its probative value was substantially outweighed by the likelihood of unfair prejudice. *See* Fed.R.Evid. 403. In this regard, trial courts have "very broad discretion in applying Rule 403 and, absent abuse, the exercise of its discretion will not be disturbed on appeal." *Liew v. Official Receiver and Liquidator*, 685 F.2d 1192, 1195 (9th Cir.1982).

Here, the potential for prejudice was not insubstantial. The prejudicial potential in admitting evidence of the acquittals was further increased by the poorly refined limiting instruction given in conjunction with its admission. The trial judge instructed the jury that evidence of the acquittals was presented "solely for the purpose of informing you that [the plaintiffs] pled not guilty to each of the charges and that a jury, following a trial, found each of them not guilty of those charges.... You are to take that as part of the evidence in this case but solely for the purpose that they tried the case and were found not guilty and not for any other purpose."[1]

The admissibility of evidence for a limited purpose is governed by Fed.R.Evid. 105. Rule 105 provides in relevant part:

When evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Rule 105 obligates the trial judge to restrict the evidence to its proper scope and entitles the opponent to an instruction cautioning the jury to the possibility of forbidden use and admonishing them not to use it for that purpose. *See Sprynczynatyk v. General Motors Corp.*, 771 F.2d 1112, 1117 (8th Cir.1985), *cert. denied*, 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986).

While it would have been better had the trial court specifically directed the jury not to consider the evidence of acquittals as proof of whether probable cause for arrest existed, Rule 105 does not require all limiting instructions to specifically contain "forbidden use" language. *See Sprynczynatyk*, 771 F.2d at 1117–18.

The limiting instruction given to the jury in this case could, and indeed should, have been tailored more narrowly. Nevertheless, it did constitute a limiting admonition of sorts. We find, therefore, that the instruction apprised the jury of the restricted nature of the proffered evidence.[2]

Moreover, additional instructions by the district court helped to further obviate potential prejudice to the appellants. It is these additional instructions that tip the balance and erase the specter of error. The jury was specifically instructed that they had the "duty to find the facts from all the evidence in the case ... solely from the evidence before you according to the law." The jury was also instructed that the burden was upon the plaintiffs to establish by a preponderance of the evidence all of the elements of a § 1983 cause of action, including the element that "defendants ... detained and arrested [plaintiffs] without reasonable or probable cause,

---

1. The trial judge enunciated somewhat more clearly the limitations on the use of the proffered evidence when he stated the evidence was being admitted "for the limited purpose of showing that work was done and the result was achieved for which attorneys' fees are requested." This statement, however, was made in chambers, outside the presence of the jury, and for purposes of our review is irrelevant in determining whether the potential for unfair prejudice substantially outweighs its probative value.

2. Additionally, we note that appellants did not request an instruction which might further limit the effect of the evidence; thus, the failure of the court to give, *sua sponte*, a more precise or limiting instruction is not error. *See Gray v. Shell Oil Co.*, 469 F.2d 742, 752 (9th Cir.1972), *cert. denied*, 412 U.S. 943, 93 S.Ct. 2773, 37 L.Ed.2d 403 (1973). *Cf. Sprynczynatyk*, 771 F.2d at 1117 (trial court refused to adopt defendants' proffered limiting instruction).

and/or initiated criminal proceedings without probable cause." Finally, the court instructed on the difference in burden of proof between a civil and criminal proceeding, specifically admonishing that "the reasonable doubt standard does not apply to a civil case and you should, therefore, put it out of your mind."

■ This court would have been inclined to exclude the evidence of acquittals altogether. The fact that plaintiffs had been previously acquitted in the criminal case is far removed from establishing whether probable cause existed for their arrests. The state's failure to prove guilt beyond a reasonable doubt does not mean in connection with the arrests that it did not meet the lesser probable cause standard—a reasonable belief that an offense has been committed and that the criminal defendant committed the crime. *See United States v. Moses,* 796 F.2d 281, 283 (9th Cir.1986).[3] Nevertheless, we are not prepared to say, under the circumstances of this case, that its admission was an abuse of discretion.

We are mindful that "[t]he considerations which arise under Rule 403, such as the potential for undue prejudice ..., are susceptible only to case-by-case determinations, requiring examination of the surrounding facts, circumstances, and issues.... Thus, it is more difficult in these cases for appellate courts to formulate rules of decision to govern future cases." *United States v. Layton,* 767 F.2d 549, 554 (9th Cir.1985) (citation omitted). Nevertheless, while we find that the district court did not abuse its "very broad" discretion in admitting evidence of the prior state court acquittals, we believe that the admission of such evidence may under certain, if not totally dissimilar, circumstances constitute an abuse of discretion. At the very least, a trial court must exercise great care in formulating appropriate limiting instructions

if it chooses to venture forth into this hazardous area.

## B. Evidence of Attorneys' Fees Incurred in Prior Criminal Proceeding

Appellants argue that admission of the amount of attorneys' fees expended during the prior state court criminal proceeding as an element of § 1983 damages was prejudicial error. We disagree.

■ Appellants cite two cases, *Perkins v. Cross,* 728 F.2d 1099 (8th Cir.1984) and *Greer v. Holt,* 718 F.2d 206 (6th Cir.1983), for the proposition that attorneys' fees cannot be awarded for time spent in defending against prior criminal charges. These cases are inapposite. Both *Perkins* and *Greer* involved attorney fee awards pursuant to 42 U.S.C. § 1988. Both cases held that attorneys' fees incurred in defending against a prior criminal charge are not compensable within the meaning of § 1988.[4] Here, the attorneys' fees arose out of the necessity of defending against allegedly unwarranted criminal charges and were presented to the trier of fact as an item of damage.

A plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations. Such damages are calculated in most circumstances according to general tort law principles applicable to the types of deprivations proved. *See generally Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The victim of the constitutional deprivation is entitled to compensation for economic harm, pain and suffering, and mental and emotional distress that results from the violations. *See id.* at 257–64, 98 S.Ct. at 1048–53.

The Borundas' expenditures for legal representation during the prior criminal

---

**3.** As the Supreme Court has explained: "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979).

**4.** The plain language of § 1988 supports these holdings. Section 1988 provides that in actions brought *"to enforce a provision of* [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee." 42 U.S.C. § 1988 (1982) (emphasis added).

proceeding most assuredly constitute economic harm. The reasonable amount of these expenditures, if proved to the jury's satisfaction to be the consequence of appellants' illegal conduct, is recoverable as compensatory damages. *See Kerr v. City of Chicago,* 424 F.2d 1134, 1141 (7th Cir.), *cert. denied,* 400 U.S. 833, 91 S.Ct. 66, 27 L.Ed.2d 64 (1970) (plaintiff in a civil rights action is allowed to recover the attorneys' fees in a state criminal action where the expenditure is a foreseeable result of the acts of the defendant).

■ Appellants argue that their illegal conduct did not proximately cause the expenditure of attorneys' fees in defending against the criminal charges since "the prosecutor is the one who decides whether or not to prosecute the case."[5] We reject this argument as well.

To be sure, even assuming that probable cause for arrest was absent, investigating officers such as the appellants may be insulated from liability for damages arising subsequent to the unlawful arrest since the prosecutor filing the criminal complaint is presumed to have exercised independent judgment in determining that probable cause for an arrest exists. *Smiddy v. Varney,* 665 F.2d 261, 266 (9th Cir.1981), *cert. denied,* 459 U.S. 829, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). That presumption, however, is rebuttable by evidence that the investigating officers made material omissions or gave false information to the prosecutor.

For example, a showing that the district attorney was pressured or caused by the investigating officers to act contrary to his independent judgment will rebut the presumption and remove the immunity. Also the presentation by the officers to the district attorney of information known by them to be false will rebut the presumption.

*Smiddy,* 665 F.2d at 266–67.

The Borundas presented sufficient evidence to challenge the presumption. The criminal prosecutor had no information available to him other than that contained in the police report submitted by appellants. The jury was entitled to find, amidst the striking omissions in the police report,[6] as well as the two officers' conflicting accounts of the incident, that appellants procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney. The amount of attorneys' fees incurred during the criminal prosecutions was a direct and foreseeable consequence of the appellants' unlawful conduct. We find no abuse of discretion in its admission.

## C. Denial of Nonsuit and/or Directed Verdict

■ After plaintiffs' opening statement, the appellants made a motion for nonsuit which was denied. At the close of plaintiffs' case, the district court similarly denied appellants' motion for directed verdict. Appellants claim error. We find none.

We review the propriety of a directed verdict under the same standard as the court below.[7] *Donoghue v. Orange Coun-*

---

**5.** On this issue, appellants also assert that they "should be cloaked with the same type of 'prosecutorial immunity' as the Deputy District Attorney." There is nothing in the parties' briefs or in the record on appeal to suggest that this "absolute immunity" point was raised at the district court level. We need not consider it now. *See, e.g., Wagenmann v. Adams,* 829 F.2d 196, 226 (1st Cir.1987).

**6.** The police report omitted the testimony at the civil trial that, while struggling with Officer Richmond, George Borunda attempted to gain control of Richmond's gun. An expert on police procedures testified that this omission in the police report ran so counter to standard police training as to render the trial testimony "rather incredulous."

**7.** Because this was a jury case, appellants' motion for dismissal pursuant to Fed.R.Civ.P. 41(b) is more properly treated as a motion for directed verdict under Rule 50(a). *See Fruit Industries Research Foundation v. National Cash Reg. Co.,* 406 F.2d 546, 550 (9th Cir.1969); *see also Stone v. Millstein,* 804 F.2d 1434, 1436 (9th Cir. 1986) ("[i]nvoluntary dismissal under Rule 41(b) 'occurs in a bench trial when the trial judge concludes that the plaintiff has not made out a case' "). Nevertheless, the same standard of review is applied whether the particular motion is characterized as a nonsuit or a directed verdict. *See Fruit Industries,* 406 F.2d at 550.

*ty,* 848 F.2d 926, 932 (9th Cir.1987). We review the evidence in the light most favorable to the nonmoving party and draw all possible inferences in favor of that party. *Id.* A directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict. *Id.* A directed verdict is improper when there is conflicting testimony raising a question of witness credibility since "[i]t is the exclusive function of the jury to weigh the credibility of the witnesses." *Id.*

To make out a prima facie case under § 1983, plaintiffs must show that the defendants (1) acted under color of state law, and (2) deprived the plaintiffs of rights secured by the constitution. *Karim–Panahi v. Los Angeles Police Department,* 839 F.2d 621, 624 (9th Cir.1988).

It is undisputed that the appellants were acting under color of state law during the course of the arrests at issue. Similarly, an arrest without probable cause violates the fourth amendment and gives rise to a claim for damages under § 1983. *McKenzie v. Lamb,* 738 F.2d 1005, 1007 (9th Cir. 1984). Where the facts or circumstances surrounding an individual's arrest are disputed, as they are here, the existence of probable cause becomes a question of fact for the jury. *McKenzie,* 738 F.2d at 1007–08.

Here, it was entirely within the jury's prerogative to find more credible the plaintiffs' version of the facts surrounding the arrest, a version corroborated by a seemingly disinterested third party.[8] In the same vein, the jury was entitled to disregard appellants' accounts of the incident, accounts fraught with discrepancies, inconsistencies, and material omissions. The jury would in our judgment be entitled to

conclude that probable cause for the arrests was nonexistent.

Finally, appellants argue that the evidence indicates their conduct, at most, amounted to "simple negligence," and thus, "plaintiffs had failed to prove or present a prima facie case of any violation of substantive constitutional due process rights under ... § 1983." This argument misses the mark.

First, we find it inconceivable that evidence, apparently found by the jury to be credible, suggesting that appellants wrongfully arrested plaintiffs for having defied their supposed authority, and then falsified the police report in order to support their inflated charges, amounts to nothing more than "simple negligence." Secondly, and more on point, appellants' argument misperceives the constitutional deprivation alleged and evidently proved to the satisfaction of the jury.

In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), and a companion case, *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), the Supreme Court held that mere negligence could not constitute a "deprivation" of life, liberty, or property under the fourteenth amendment. Contrary to appellants' assertion, this holding has little relevance to a § 1983 action involving fourth amendment rights.[9]

The motions for directed verdict were properly denied.

On appeal, the appellees request attorney's fees under 42 U.S.C. § 1988 and Fed.R.App.P. 38. This appeal was not frivolous, and sanctions under Rule 38 are inappropriate.

**8.** Elias Nunez, a neighbor at the time of the incident, testified that he saw two police officers pull up in front of 827 Beech Street and speak to Richard Borunda and a companion, who were sitting by the front door of the residence drinking beer. Nunez heard Richard reply that he was on private property. The police then got out of their patrol car, and Richard Borunda went into his house. The two officers went inside after Richard. The officers stayed inside for three minutes. During this time, other offi-

cers came to the front of 827 Beech Street, but stayed outside the residence.

**9.** The *Daniels* court noted that "we need not rule out the possibility that there are other constitutional provisions that would be violated by mere lack of care in order to hold ... that such conduct does not implicate the Due Process Clause of the Fourteenth Amendment." *Id.* 474 U.S. at 334, 106 S.Ct. at 666.

In pertinent part, 42 U.S.C. § 1988 provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." While a federal court, by the plain wording of § 1988, has "discretion" to allow fees to a prevailing party, the Supreme Court has severely limited the exercise of that discretion. *See Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust"). As one commentator has noted: "The presumption in favor of an award of fees to prevailing plaintiffs in private attorney general lawsuits is, in fact, so strong that a denial of fees on the basis of 'special circumstances' is extremely rare." 1 M. Derfner & A. Wolf, *Court Awarded Attorney Fees* ¶ 10.02[3], at 10–12 (1988). Indeed, one disgruntled district judge described the restrictive interpretation places upon the "special circumstances" exception as

> render[ing] [the exception] in effect a nullity. This interpretation is reminiscent of the passage wherein Macbeth remarked. "Life's but a walking shadow; a poor player, That struts and frets his hour upon the stage. And then is heard no more; it is a tale Told by an idiot, full of sound and fury, Signifying nothing."

*Connor v. Winter,* 519 F.Supp. 1337, 1348 (S.D.Miss.1981) (three-judge court) (Cox, J., dissenting). *See also Gates v. Collier,* 559 F.2d 241, 244 (5th Cir.1977) (Coleman, J., concurring) ("I concur in the award of ... attorneys' fees ..., but I do so only because Congress has seen fit to *require* it") (emphasis added).

We have, nonetheless, denied section 1988 fees on appeal to a prevailing plaintiff-appellee because counsel failed to adequately brief the issues he presented, thereby requiring the court to engage in independent research. *See Bateson v. Geisse,* 857 F.2d 1300, 1306 (9th Cir.1988); *Robins v. Harum,* 773 F.2d 1004, 1011 (9th Cir.1985). Such is not the case here. Accordingly, because appellees were the "pre-

vailing party" in the underlying litigation and we are unable to discern "special circumstances" to the contrary, they are entitled to attorney's fees for time reasonably spent defending the jury verdict on appeal. Pursuant to Ninth Circuit Rule 39–1.6, appellees will file an itemized proposal of their attorney's rates and hours worked within 14 days of the filing of this amended opinion. The amount of fees will be fixed by separate order.

AFFIRMED.