8 F.3d 28
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
J. Manuel MORALES, Plaintiff-Appellant-Cross-Appellee,
v.
CITY OF SAN RAFAEL; Daniel Hulett,
Defendants-Appellees-Cross-Appellants.
 Nos. 91-16109, 91-16234.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1992.
Decided Sept. 28, 1993.
 
 Before D.W. NELSON and REINHARDT, Circuit Judges, and CALLISTER,* District Judge.
 MEMORANDUM**
 J. Manuel Morales appeals the entry of judgment notwithstanding the verdict (JNOV) on his false-arrest claim under 42 U.S.C. § 1983 and on various state-law claims. Daniel Hulett cross-appeals, contending that the district court failed to rule upon his conditional motion for new trial when it granted JNOV. Because we conclude the district court improperly weighed the credibility of witnesses, we reverse the entry of JNOV. We also conclude that the court did rule upon the motion for new trial. We remand for entry of judgment on the jury's verdict and for determination of Morales' claim for attorney's fees.
 * Morales and his family attended a party, sponsored by the Latino community of their parish church, on May 10, 1985 at the San Rafael Community Recreation Center. At about 9:00 that evening, a security guard posted in the parking lot noticed a rifle in the interior of a parked blue van and contacted the police department. Officers removed the rifle from the van after opening the locked vehicle using a slim jim. Officer Richard Clary seized the rifle when he discovered that it was loaded with military rounds. He left a note on the van instructing the owner of the rifle to contact the police regarding its seizure.
 Clary took the rifle back to the station, where he informed the next shift, including defendant Hulett, the shift commander, of the circumstances surrounding its seizure. A computer printout revealed that San Rafael resident Robert Garcia was the registered owner of the blue van. A separate computer search turned up an eight-month old outstanding arrest warrant, issued by the Los Angeles Police Department, for Roberto Garcia, who was wanted for murder. The descriptions of the two Garcias contained similarities as well as significant differences. Hulett testified that he felt that there was a possibility, though not a strong one, that the van owner was the man described in the warrant.
 At some point after seizure of the rifle, Francisco Garcia, brother of the registered van owner, approached the plaintiff and asked him to inquire about the gun's seizure. Aware of Garcia's difficulty with English, Morales agreed to assist him, and approached security guard Jefferson Klugman. In inquiring about the seizure, Morales never informed Klugman that he was the owner of the van or the rifle. Klugman suggested that Morales contact the police about the seizure. Later, again at Garcia's request, Morales approached Klugman and asked whom to call at the police department. Klugman was unable to provide a name.
 In the late evening, Morales and his family left the party, but when they arrived at their car, Morales realized that he had failed to return an expensive pen he had earlier borrowed. Leaving his wife and children in the car, Morales went back to the party and gave the pen back to his friend. Upon exiting the center, Morales noticed that Klugman was speaking to a police officer sitting in a patrol car. The officer was defendant Hulett, who had arrived a few minutes earlier on routine patrol. Morales saw Klugman point in his direction. Klugman testified that he told Hulett he thought Morales was the owner of the van. Rather than avoiding Klugman and Hulett, which he thought would look suspicious, Morales walked toward them en route to his car.
 As Morales approached, Hulett got out of his patrol car and called for back-up. When Morales got close to where Hulett and Klugman stood, someone called out to him. Hulett and Morales then engaged in a very brief conversation, which culminated in the handcuffing and arrest of Morales.
 According to Morales, when someone called out to him, he thought he should explain his previous conversation with the security guard, so he said, "Yes, Officer. All I had is a question." Morales testified that he then asked about the seizure of the rifle from the Garcia van and that Hulett was rude and abusive. Morales stated taht Hulett asked to see his identification. According to Morales, he responded, "If I show you my identification, will you answer the question then?" He also stated that he was reaching for his back pocket when Hulett grabbed his hands and placed him under arrest.
 Hulett's version of the conversation differs. He claimed that Morales was confrontational, demanding information about the rifle seizure. Hulett also testified that Morales referred to the blue van as "my van." According to Hulett, Morales also repeatedly failed to provide identification when Hulett requested it; at one point, Morales asserted that he did not have to show his identification to the officer. Hulett stated that he warned Morales he would arrest him if he did not produce identification; when Morales responded with another question, Hulett arrested him.
 After the arrest, another San Rafael police officer, Mark Van Buskirk, handcuffed Morales and transported him to the police station. Upon collecting his possessions, the police discovered that Morales had no identification with him. However, when Morales' wife arrived at the station with his identification, Hulett ordered him released. Testimony differed on how long Morales was held; estimates ranged from 40 minutes to two hours.
 After a five-day trial and one day of deliberation, the jury returned a verdict in favor of Morales on his federal claim of false arrest, as well as on his state claims of false arrest, assault, and negligence. The jury held in favor of Hulett on Morales' claim of intentional infliction of emotional distress. The jury awarded Morales $17,500 in compensatory damages.
 Hulett moved for judgment notwithstanding the verdict and, in the alternative, for new trial. The district court heard argument, and indicated its intention to grant JNOV. The district court concluded that "[t]here's simply no evidence to support ... anything other than good faith conduct by the officer, which was performed in a reasonable fashion." The court entered judgment in favor of Hulett on June 24, 1991.
 II
 This case reduces to a straightforward application of our established approach to requests for JNOV and of our precedent on the determination of probable cause in a section 1983 claim.
 To establish a claim of false arrest under section 1983, the plaintiff must prove that he was arrested without "probable cause." Probable cause to arrest exists when under the totality of the circumstances known to the arresting officer, a prudent person would conclude that there is a fair probability that the arrestee had committed or is committing a crime. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir.1991), cert. denied, 112 S.Ct. 2995 (1992).
 Hulett contends that JNOV was proper on either of two bases. First, Hulett argues that probable cause existed to arrest Morales for violating California Penal Code § 148--misdemeanor obstruction of a police officer--because Morales obstructed his investigation of the van owner as a possible match to the arrest warrant by refusing to provide identification. Second, Hulett contends that he is entitled to qualified immunity because arresting Morales for refusing to identify himself did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Both theories depend upon a preliminary determination that Morales in fact refused to identify himself. Testimony at trial conflicted on this issue.
 The two main competing witnesses--and sole participants in the confrontation leading up to Morales' arrest--Morales and Hulett presented starkly different accounts bearing on the identification issue. Under Hulett's version, Morales repeatedly failed to provide identification when asked and asserted that he did not have to provide his identification to the officer. Hulett warned Morales that he would be arrested if he did not present identification, and arrested him only after he once again failed to produce identification. This account was partially corroborated by Officer Van Buskirk.
 Under Morales' version of the confrontation, however, Hulett only requested identification once, after belligerent responses to Morales' questions about the van. When Hulett made the request, Morales indicated his willingness to show his identification and reached for his back pocket to retrieve his wallet. Morales was prevented from complying with the request for identification when Hulett grabbed his arms and arrested him.
 Each side presented other evidence which it argued corroborated its version of the arrest. Prior inconsistent deposition testimony by both both Hulett and Morales was introduced. Hulett presented testimony that Morales had no identification on his person when he was taken to the police station, and argued that this fact severely impeaches Morales' contention that he was reaching for his identification.[1] Morales presented evidence and argued that Hulett's rationale for his arrest was devised long after the fact in anticipation of Morales' false arrest claim. The issue of whose version of the arrest was accurate was thoroughly explored at trial.
 In sum, Morales' testimony contradicted the testimony of two police officers regarding the facts of his arrest--the central facts underlying his claim of constitutional tort. On the key question whether he refused to provide identification, each side's version points to a different logical conclusion. If the jury believed Morales, he never refused to provide identification; if they believed the officers, Morales did refuse.
 "Where the facts or circumstances surrounding an individual's arrest are disputed, as they are here, the existence of probable cause becomes a question of fact for the jury." Borunda v. Richmond, 885 F.2d 1384, 1391 (9th Cir.1988); see also McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir.1984) ("in a § 1983 action the factual matters underlying the judgment of reasonableness generally mean that probable cause is a question for the jury"). Similarly, where the facts underlying a claim of qualified immunity are in dispute, those facts are to be determined by the fact finder--in this case, the jury. See Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir.1993). The question whether Morales refused to identify himself was for the jury to resolve.
 General principles governing judgment notwithstanding the verdict require the same result. JNOV is appropriate only where the jury verdict is not supported by substantial evidence. E.g., Landes Constr. Co. v. Royal Bank, 833 F.2d 1365, 1370-71 (9th Cir.1987). A court should upset the jury's verdict only where the evidence at trial supports only one reasonable verdict--that in favor of the moving party. E.g., The Jeanery, Inc. v. James Jeans, Inc., 849 F.2d 1148, 1151 (9th Cir.1988). The court must view the evidence as a whole in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.[2] E.g., Garvin v. Greenbank, 856 F.2d 1392, 1396 (9th Cir.1988); Peterson v. Kennedy, 771 F.2d 1244, 1252 (9th Cir.1985), cert. denied, 475 U.S. 1122 (1986). "JNOV is improper if reasonable minds could differ over the verdict." Id.
 The federal courts have long recognized that the rule allowing the entry of judgment notwithstanding the jury's verdict does not suborn nor tolerate court usurpation of the jury's proper function. "[T]hat rule has not taken away from juries and given to judges any part of the exclusive power of juries to weigh evidence and determine contested issues of fact--a jury being the constitutional tribunal provided for trying facts in courts of law." Berry v. United States, 312 U.S. 450, 453 (1941). The federal court must protect the province of the jury, and the court may not weigh the evidence or make determinations of credibility in assessing the propriety of JNOV. See, e.g., Air-Sea Forwarders, Inc. v. Air Asia Co., 880 F.2d 176, 189 (9th Cir.1989), cert. denied, 493 U.S. 1058 (1990); Landes Constr. Co., 833 F.2d at 1371. JNOV is thus particularly inappropriate where "the trial consist[s] of little more than a swearing contest." Id.
 "Here, it was entirely within the jury's prerogative to find more credible the plaintiff's version of the facts surrounding the arrest," and "the jury was entitled to disregard [the officers'] accounts of the incident." Borunda, 885 F.2d at 1391. The district court improperly weighed evidence and assessed credibility in granting JNOV. Substantial evidence, consisting primarily of Morales' testimony that he did not refuse to provide identification, supported the jury's conclusion that probable cause did not support the plaintiff's arrest and that Hulett was not entitled to qualified immunity. The jury's verdict on Morales' section 1983 claim must be reinstated.
 Because Morales' section 1983 claim supported the jury's verdict in his favor, we need not consider the appropriateness of JNOV on any of the state-law claims. Cf. Traver v. Meshriy, 627 F.2d 934, 938 (9th Cir.1980) (reviewing court has discretion to construe a general verdict as attributable to one of several theories if supported by substantial evidence).
 III
 Hulett cross-appeals, contending that the district court failed to rule on his conditional motion for new trial when it granted his motion for JNOV. Hulett is incorrect. He submitted two proposed orders to the district court, one granting JNOV and the conditional motion for new trial, and another granting JNOV only. The district court signed the latter, effectively denying the conditional motion. The signed order disposed of both motions. Indeed, at the hearing on April 17, 1992, the district court explicitly stated that its decision not to sign the order granting the conditional motion for new trial was considered and intentional, confirming that it intended to deny the motion for new trial by signing the order granting JNOV only.
 Although the district court's denial of the motion for new trial did not strictly conform to the rules governing the entry of an order, Hulett did not raise this issue. His cross-appeal is based entirely on the contention that the court failed to rule on the conditional motion, and the relief he requests is an order that it do so. We conclude that the court did in fact rule upon Hulett's conditional motion and denied it. Hulett has not briefed or argued, nor requested an opportunity to brief or argue, the substantive question whether a new trial was warranted. Nor does he otherwise explain why the trial court's denial of the motion for new trial was erroneous. We therefore reject Hulett's request for relief.
 IV
 Substantial evidence supported the jury's verdict; the district court erred in granting JNOV. We reverse and remand. On remand, the district court shall enter judgment in favor of Morales on the jury's verdict and proceed to determine Morales' request for attorney's fees.
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable Marion J. Callister, Senior United States District Judge for the District of Idaho, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the Courts of this Circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The jury apparently disagreed with Hulett's assessment, and we point out that it was not irrational to do so. Morales may not have been aware that he did not have his wallet when he reached for his back pocket. The fact that Morales actually possessed no identification at the time may have somewhat impeached his testimony but it does not render the jury's verdict in favor of him unreasonable
 
 
 [2]
 In his brief, Hulett contends that only uncontroverted evidence should be considered in deciding on JNOV. That is plainly incorrect. All evidence must be considered, with all reasonable inferences from disputed evidence drawn in favor of the non-moving party