117 F.3d 1425
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Dennis Lea MILLER; Michelle Miller, Plaintiffs-Appellants,
v.
David DALE, husband; Keith DeLorenzo, husband; Dorothy
DeLorenzo, wife; Duane Pell, husband; Duane (Mrs.) Pell,
wife; Don A. Reville, husband; Robert A. Combs, husband;
Barbara Combs, wife; Delbert Plumley, husband; Charlotte
Plumley, wife; Lareyl Tahbo, husband; Tammy Tahbo, wife;
Chris Weaver, husband; Carol Weaver, wife; Rod Campbell,
husband; Hualapai Valley Fire District; George Koskela,
husband; Sandra Koskela, wife; Standford D. Cook, husband;
Joan Cook, wife; Mohave County (Arizona); Sandra Dale;
Juanita Reville, Defendants-Appellees.
 No. 95-17194.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 15, 1997.
Decided July 2, 1997.
 
 1
 Before: D.W. NELSON and FERNANDEZ, Circuit Judges, and DONALD W. MOLLOY, District Judge.**
 
 
 2
 MEMORANDUM*
 
 
 3
 Dennis Miller appeals the district court's summary judgment for defendants in his 42 U.S.C. § 1983 action for damages. Miller contends that various state, county, and district defendants violated his Fourth and Fourteenth Amendment rights when they (1) misled the prosecutor and grand jury into believing that there was probable cause for Miller's arrest, and (2) destroyed potentially exculpatory evidence. Miller also contends that the defendants entered into an unlawful conspiracy to deprive him of his constitutional rights. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 THE FOURTH AMENDMENT CLAIM
 
 4
 Miller claims that fire investigators David Dale, Keith DeLorenzo, and George Koskela secured his unlawful arrest by manufacturing probable cause. Investigating officers may be insulated from liability for damages arising from an unlawful arrest because "the prosecutor filing the criminal complaint is presumed to have exercised independent judgment in determining that probable cause for an arrest exists." Borunda v. Richmond, 885 F.2d 1384, 1390 (9th Cir.1988). This presumption is rebutted, however, "by evidence that the investigating officers made material omissions or gave false information to the prosecutor." Id. Thus, liability may lie where investigating officers supply a prosecutor with misleading or false information which influences the prosecutor's decision to proceed against a suspect. See Smiddy v. Varney, 665 F.2d 261, 265 (9th Cir.1981).
 
 
 5
 Miller's Fourth Amendment claim fails because no reasonable trier of fact could conclude that the investigators misled either the prosecutor or the grand jury into believing that probable cause supported Miller's arrest. Although DeLorenzo did not mention flashover in his fire investigation report, it is undisputed that he discussed the theory in his meeting with the prosecutor, James Zack, on February 5, 1991. DeLorenzo explained that the large, erratic burn pattern presented by the Miller fire was not consistent with flashover. It is also undisputed that DeLorenzo provided Zack with literature on flashover and the phone numbers of investigators familiar with flashover.[1] While DeLorenzo may not have presented Zack with as complete an account of flashover as Miller would have liked, DeLorenzo did not mislead Zack into improperly dismissing flashover as a causal agent of the fire. Likewise, it is clear that Koskela told Zack about Miller's son Bobby's fascination with fire, a cigarette lighter that Miller claimed was missing, and the investigators' unsuccessful search for that lighter. Contrary to Miller's assertion, the investigators never told Zack that they had "layered down" the south bedroom during the course of the search.[2]
 
 
 6
 DeLorenzo's and Koskela's testimony before the grand jury does not support Miller's Fourth Amendment claim. The "hero" theory proferred by DeLorenzo is not inconsistent with the Millers' attempted reconciliation because the motivation to set a "hero" fire is triggered by the desire to improve an otherwise at-risk relationship. Nor did DeLorenzo mislead the grand jury when he testified that it was "difficult" for him to enter the south bedroom from the hallway because a mattress was blocking the bedroom's entrance. We agree with the district court's characterization of DeLorenzo's testimony: It was "consistent with the finding that the mattress did obstruct the doorway but not to the extent of being a barricade."
 
 
 7
 Finally, even if we assume arguendo that Koskela's testimony to the grand jury about Bobby Miller's fireplay capabilities was not entirely accurate, such testimony does not support a Fourth Amendment claim because Koskela had no duty to disclose exculpatory evidence to the grand jury. See United States v. Williams, 504 U.S. 36, 51-52 (1992); United States v. Isgro, 974 F.2d 1091, 1096 (9th Cir.1992) ("[The] suspect under investigation by the grand jury [has never] been thought to have a right ... to have exculpatory evidence presented." ) (quoting Williams, 504 U.S. at 52). Bobby's evident success at lighting a cigarette lighter is exculpatory insofar as it provides an alternative account of the fire's origin. Accordingly, Koskela cannot be held liable for his alleged mischaracterization of Michelle Miller's statement.
 
 
 8
 The only statement or omission that might raise a genuine issue of material fact precluding summary judgment on Miller's Fourth Amendment claim is Dale's failure to disclose his involvement in, and the result of, two prior flashover cases. But even this omission, while material, does not appear to have caused Zack to proceed with Miller's prosecution. Zack received information about flashover and was told why flashover could not explain the fire pattern presented at Miller's mobile home. Furthermore, the Knapp and Girdler cases undermined Zack's belief that he could prove Miller's guilt to a jury beyond a reasonable doubt. But they did not change his belief that he "still had probable cause to make the proper prosecution" against Miller. Thus, even if Dale misled Zack when he failed to disclose his participation in the Knapp and Girdler cases, revelation of this fact would not have changed Zack's decision to take the case to a grand jury.
 
 
 9
 Miller has failed to raise a genuine issue of material fact as to whether the investigators' misstatements or omissions caused Zack to prosecute him or the grand jury to indict him. Therefore, we affirm the district court's summary judgment for defendants on Miller's Fourth Amendment claim.
 
 THE FOURTEENTH AMENDMENT CLAIM
 
 10
 Miller's claim that his Fourteenth Amendment right to due process was violated when the Hualapai Valley Fire Department and county defendants destroyed the HVFD's dispatch tape and the Mohave County Sheriff's Office's 911 dispatch tape fails because he has not demonstrated that the exculpatory value of the evidence was apparent at the time of its destruction. See Arizona v. Youngblood, 488 U.S. 51, 58 (1988); California v. Trombetta, 467 U.S. 479, 489 (1984); People of the Territory of Guam v. Muna, 999 F.2d 397, 400 (9th Cir.1993).
 
 
 11
 To be sure, the facts surrounding the defendants' destruction of the tapes raise an inference of misconduct and suggest that the defendants were attempting to hide information contained on the missing tapes. Miller has failed, however, to raise a genuine issue of material fact as to whether this information would have exculpated him of the criminal charges on which he was indicted. Miller cannot rely simply upon the defendants' suspicious behavior to prove that the tapes contained exculpatory evidence because it is just as likely that the defendants destroyed the tapes in order to hide evidence of their own allegedly negligent fire suppression efforts. More directly, he does not explain how the erased transmissions could have indicated that the fire was accidental or that it was caused specifically by flashover. Miller's expert states that he has "had many occasions to review dispatch tapes and ha[s] found on them both inculpatory and exculpatory information relative to an ongoing fire investigation," but he does not identify how the particular information on these dispatch tapes would exculpate Miller. The mere chance that evidence might contain exculpatory information does not compel its preservation by the government.
 
 
 12
 Miller has not raised a genuine issue of material fact as to whether the exculpatory value of the evidence was apparent at the time of its destruction. Accordingly, we affirm the summary judgment for defendants on Miller's Fourteenth Amendment claim.
 
 THE CONSPIRACY CLAIM
 
 13
 A conspiracy allegation does not give rise to § 1983 liability unless there is an actual deprivation of the plaintiff's constitutional rights. Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir.1989). Because Miller's underlying constitutional claims do not survive summary judgment, his conspiracy claim fails as well.
 
 CONCLUSION
 
 14
 For the foregoing reasons, the district court's judgment is AFFIRMED.
 
 
 
 **
 The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Miller's contention that Zack "does not recall receiving any specific written materials from DeLorenzo prior to the grand jury indictment" is misleading. When asked whether DeLorenzo ever provided him with any literature or written information concerning flashover, Zack replied, "Yes." Zack simply could not recall the specific materials that were provided to him
 
 
 [2]
 Miller relies upon his own expert's affidavit to support his assertion that the investigators told Zack they had "layered down" the south bedroom. This reliance is entirely misplaced. Miller's expert stated that "it was evident" to him "that the prior fire investigators had not conducted a layer search of the south bedroom...." Miller's expert does not purport to know what the investigators told Zack about their investigation of the south bedroom