**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

REXFORD LEROY NEWMAN, JR.,
     *Plaintiff-Appellant,*

v.

COUNTY OF ORANGE; MATTHEW
JOHNSON; JEFFREY PUSKAS,
     *Defendants-Appellees.*

No. 04-56103

D.C. No.
CV-02-01152-GLT

OPINION

Appeal from the United States District Court
for the Central District of California
Gary L. Taylor, District Judge, Presiding

Argued and Submitted
April 4, 2006—Pasadena, California

Filed August 7, 2006

Before: Dorothy W. Nelson, Diarmuid F. O'Scannlain,
Circuit Judges, and Robert C. Jones,* District Judge.

Opinion by Judge O'Scannlain

---

*The Honorable Robert C. Jones, United States District Judge for the
District of Nevada, sitting by designation.

**COUNSEL**

Jerry L. Steering, Law Office of Jerry L. Steering, Newport Beach, California, argued the cause for the appellant and filed a brief.

David D. Lawrence, Franscell, Strickland, Roberts & Lawrence, Orange, California, argued the cause for the appellee; Christina M. Sprenger and Jorge Chica were also on the brief.

---

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide what evidence a civil rights plaintiff alleging malicious prosecution must produce to overcome the presumption that a prosecutor exercises independent judgment in choosing to file charges.

I

Shortly before Christmas in 2001, Orange County Deputy Sheriff Matthew Johnson ("Johnson"), a motorcycle officer, initiated a traffic stop of Rexford Leroy Newman, Jr. ("Newman"), in San Juan Capistrano, California. After Johnson handed him a traffic citation for speeding, Newman asked if there was any chance he could receive a warning instead of a citation. According to Johnson, Newman explained that he had been in the Air Force and was a 30-year veteran pilot in the airline industry. Newman claims that he told Deputy Johnson only that he had not had a ticket in the previous sixteen years and that his father was a deputy sheriff. Newman eventually signed the citation and was given a copy of the ticket. As Johnson turned to go, Newman said, "I hope you have a Merry Christmas." The two disagree about what happened next.

## A

Johnson says that he walked back to his motorcycle and began writing his notes about the traffic stop. Newman started his car and accelerated back onto the highway, kicking up rocks and debris that then peppered Johnson and his motorcycle. Johnson got back on his motorcycle and pulled Newman over again.

Johnson instructed Newman to get out of his vehicle, and Newman replied, "Why, just because of a little dirt? I don't see any dirt on you?" Newman then got out of his Jeep, and Deputy Johnson informed him that he was under arrest. Deputy Johnson's initial crime report describes what happened next:

> I told him to put his hands behind his back and as I grabbed his left arm from behind, he yanked his arm away from me and spun to his left. Newman yelled "you're not going to arrest me for this." As he spun he struck my left shoulder with his right arm. I then grabbed his left arm again and attempted to place a wristlock on him. He continued to try and pull away from me, so I attempted to trip him to the ground. As I attempted to trip him I slipped on the gravel and we both fell to the ground. I was on top of him and I used my radio pac set to call for assistance. Newman was still struggling and attempting to break free. I was holding him down and attempted to deploy my pepper spray. I removed my pepper spray from my duty belt and with one hand, attempting to hold him down. I could not get an accurate spray on Newman, the pepper spray had little or no affect [sic] on Newman.

> Assisting Deputies arrived and Newman was handcuffed and placed in the back seat of a marked patrol unit.

B

By comparison, Newman claims that, after receiving his speeding ticket, he replaced all of his documentation, checked his mirrors, and pulled back into the flow of traffic. After traveling 150-200 feet, he moved into the left turn lane when he again saw Deputy Johnson's motorcycle behind him, blue lights flashing.

Johnson pulled up beside Newman and yelled at him to pull to the curb. When Newman asked if he could complete his left turn, Johnson screamed at him to "pull to the right curb now." Newman did as instructed, and Deputy Johnson yelled at him to step out of the car. Newman again complied and noticed that Johnson was talking into his radio while standing in a dangerous spot in the road. He yelled at Johnson "to get out of the traffic, you're going to get hit."

When Johnson finished with his radio, he told Newman to "go sit on the curb." Newman walked to the curb and turned to sit, and as he did, he saw Johnson running and spraying pepper spray towards him. As the pepper spray hit Newman's arm, he turned his body to the left, raising his right arm to protect his face. Despite this, the pepper spray got in his face, and Newman closed his eyes to protect them. Then Johnson hit him in the back, knocking Newman to the ground and yelling at him to "get prone on the ground."

At that moment, Johnson's backup began arriving, including Deputy Jeffrey Puskas. With Puskas' assistance, Johnson handcuffed Newman, searched him, and placed him in a patrol car. Johnson then drove Newman to the Orange County jail for booking.

C

After Newman's arrest, the Orange County District Attorney's Office filed a misdemeanor criminal action against him

for speeding and for resisting, obstructing, or delaying a peace officer in violation of California Penal Code § 148. A jury acquitted Newman of all charges.

Following his acquittal, Newman filed suit under 42 U.S.C. § 1983 against Johnson, Puskas, and Orange County, alleging over a dozen causes of action, including malicious prosecution. The defendants filed a motion for summary judgment, which the district court granted on Newman's malicious prosecution claim, finding that he was unable to overcome the presumption that the prosecutor had exercised independent judgment.

Newman sought leave to bring this interlocutory appeal, and we granted his request. We review the district court's grant of summary judgment *de novo*. *Delta Savings Bank v. United States*, 265 F.3d 1017, 1021 (9th Cir. 2001).

II

Newman presents two arguments on appeal. First, he claims that the district court misinterpreted our previous pronouncements concerning the evidence required to rebut the presumption that a prosecutor exercises independent judgment. Second, assuming the district court's interpretation was correct, Newman insists that he produced sufficient evidence to overcome the presumption. We address his arguments in turn.

A

[1] We have long recognized that "[f]iling a criminal complaint immunizes investigating officers . . . from damages suffered thereafter because it is presumed that the prosecutor filing the complaint exercised independent judgment in determining that probable cause for an accused's arrest exists at that time." *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) (*Smiddy I*). The plaintiff bears the burden of producing

evidence to rebut such presumption. Newman argues that he rebutted the presumption with his account of his arrest. Our cases suggest otherwise.

1

We first identified the presumption in *Smiddy I*, 665 F.2d at 266. There, an individual cleared of a murder charge brought suit under 42 U.S.C. § 1983 against the officers responsible for his arrest. *Id.* at 263-64. After a jury found for the plaintiff, the officers appealed, claiming that they were not liable for damages suffered after the district attorney filed the formal complaint. *Id.* at 266. We agreed, noting that

> [a] police officer's lot already is unfortunate because it is he who often is the only actor in the chain of decisions leading to prosecution who is subject to section 1983 liability. We need not make it more unfortunate by holding the officer liable for damage that is the result of the intervening fault of others in the chain. The existence of the possibility of absolute liability on the part of the municipality or governmental unit further underscores the justice of limiting the liability of the police officers.

*Id.* at 267. This justified a rebuttable presumption that a prosecutor exercises independent judgment in deciding to file charges. After identifying such presumption, we returned the case to the district court to determine whether the plaintiff was able to rebut the presumption. *Id.* at 268.

Following the remand, the district court granted summary judgment to the plaintiff. We reversed, holding that the plaintiff had failed to meet his burden. *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986) (*Smiddy II*). He produced no evidence "that the district attorney was subjected to unreasonable pressure by the police officers, or that the officers knowingly withheld relevant information with the intent to harm [him],

or that the officers knowingly supplied false information." *Id.* Thus, "the presumption was sufficient to require summary judgment" for the defendant officers. *Id.*

2

Our later cases further explained the types of evidence necessary to overcome the presumption. In *Borunda v. Richmond*, 885 F.2d 1384, 1390 (9th Cir. 1988), we affirmed an award of damages that included attorneys' fees incurred defending against criminal charges of which the plaintiffs were acquitted. The prosecutor based the decision to prosecute solely on the information contained in the officers' reports, but the plaintiffs highlighted striking omissions in the those reports as well as the fact that the officers themselves offered conflicting stories. *Id.* On the basis of such evidence, "[t]he jury was entitled to find . . . that [the officers] procured the filing of the criminal complaint by making misrepresentations to the prosecuting attorney." *Id.* Thus, the plaintiff had rebutted the presumption of independent judgment, and the attorneys' fees were properly included in the calculation of damages. *Id.*

In *Barlow v. Ground*, 943 F.2d 1132 (9th Cir. 1991), a similar case, we held that a civil rights plaintiff seeking attorneys' fees as damages had also produced sufficient evidence to overcome the *Smiddy* presumption. There, as in *Borunda*, the prosecutor relied solely on the arresting officers' reports, which omitted critical information. *Id.* at 1137. Further, an independent witness corroborated at least part of the plaintiff's version of events, and the officers' accounts conflicted. *Id.*

**[2]** In contrast, we have stated that a plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment. *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994). *Sloman*, like *Borunda* and *Barlow*, involved whether attorneys' fees could be counted as

damages. Like those cases, prosecutors relied exclusively on reports submitted by officers. However,

> Sloman did not and does not point to any evidence of . . . fabrication other than the fact that the officers' reports were inconsistent with Sloman's own account of the incidents leading to his arrest. Such conclusory allegations, standing alone, are insufficient to prevent summary judgment.

*Id.* Because Sloman had no evidence of material omissions, or inconsistent police or eyewitness accounts, he could not demonstrate a genuine issue of material fact as to whether the prosecutor exercised independent judgment. Summary judgment for the defendant officers was therefore appropriate. *Id.*

3

**[3]** Although *Sloman* addressed whether a plaintiff could recover attorneys' fees incurred in defending a criminal prosecution, we see no reason to apply its rule narrowly. Therefore, *Sloman*'s rule should apply to malicious prosecution claims, including Newman's. Newman contends, however, that *Sloman* means only that an officer is not liable for damages "if a malicious prosecution plaintiff's version of the subject events is different than the police version, but the prosecutor would have filed" a criminal action based even on the plaintiff's version.

We decline to read *Sloman*'s clear statement so narrowly. First, Newman's argument places the focus on the wrong party. The question, under *Smiddy*, is not whether the prosecutor, in the face of conflicting accounts, would have filed charges based on the *plaintiff's* story, but whether she would have done so based on the *officer's*. Prosecutors generally rely on police reports—not suspect's stories—when deciding whether charges should be filed. We presume they rely on their independent judgment when deciding whether such

reports warrant the filing of criminal charges, unless contrary evidence is presented. If charges are filed, *Smiddy* protects the officers unless such evidence shows that officers interfered with the prosecutor's judgment in some way, by omitting relevant information, by including false information, or by pressuring the prosecutor to file charges. A suspect's account of an incident, by itself, is unlikely to influence a prosecutor's decision, and thus, it cannot, by itself, serve as evidence that officers interfered with the prosecutor's decision.

Indeed, Newman's argument would effectively nullify the presumption entirely. We are hard-pressed to conceive of a malicious prosecution case in which the plaintiff's version of events would *not* conflict with the arresting officer's account. In virtually every case, then, the presumption would be rebutted, and it would never limit the liability of the officer, contrary to its stated purpose.

**[4]** We must therefore reject Newman's argument. To rebut the presumption of independent judgment and to survive summary judgment on a malicious prosecution claim, a plaintiff must provide more than an account of the incident in question that conflicts with the account of the officers involved.

### B

Newman finally argues that he introduced sufficient evidence to rebut the *Smiddy* presumption.

### 1

First, Newman claims that "Deputy Johnson's probable cause declarations contradicted several of the material issues of fact shown in his Initial Crime Report." There are some differences in the two documents. In his initial crime report, Johnson says that he told Newman to get out of his vehicle, while in the probable cause declaration, Johnson only says that Newman "exited his vehicle." In the crime report, John-

son states that he told Newman to put his hands behind his back, but in the probable cause declaration, Johnson says that he attempted to search Newman and told him to put his hands behind his back. We are not persuaded that these discrepancies are material.

**[5]** The probable cause declaration and the initial crime report agree that Newman reacted violently when Johnson informed him that he was being arrested; he yelled, "You're not going to arrest me for this," and hit Johnson with his right arm. A struggle ensued that ended only when backup officers arrived to help subdue Newman. The minor differences in the two accounts do not concern Newman's resistance or Johnson's response. As such, they have no bearing on whether Johnson interfered with the prosecutor's independent judgment because they do not concern the conduct for which Newman was ultimately charged—resisting, obstructing, or delaying an officer.

2

**[6]** Second, Newman offers the fact that Deputy Johnson initially denied listening to his personal audio tape recorder on the day of Newman's arrest, but later changed his story after being confronted with a video that showed him doing just that. Johnson stated that he believed his tape was already full when he arrested Newman and that he turned the tape in after his shift. The tape was never located, and the record contains no evidence as to what it did or did not contain. More importantly, neither Johnson's probable cause declaration nor his initial crime report say anything about whether he did or did not listen to his recorder. We are not convinced that the fact that an officer may have forgotten, over a year after the fact, that he listened to an audio recording that may or may not have recorded anything can, by itself, be considered "ample evidence from which a reasonable jury could conclude that the arresting officers, through false statements and mate-

rial omissions in their reports, prevented the prosecutor from exercising independent judgment." *Barlow*, 943 F.2d at 1137.

### 3

**[7]** We therefore conclude that Newman failed to provide sufficient evidence to overcome the presumption of independent judgment.

### III

In summary, the fact that a plaintiff's version of an incident conflicts with that of the law enforcement officers involved is not enough to defeat the presumption that a prosecutor exercises independent judgment. A plaintiff who presents only such evidence cannot survive summary judgment on a malicious prosecution claim. Newman's evidence is therefore insufficient to rebut the presumption, and the district court's grant of summary judgment on his malicious prosecution claim is therefore

**AFFIRMED.**